TOUSA HOMES, INC., fka Engle Homes, Inc., a Florida Corporation, Plaintiff,

v.

Brent R. PHILLIPS, an individual; Linda F. Phillips, an individual; Jeff Thomson, an individual; Meridian Development, Inc. fka Trophy Homes, Inc., a Nevada company; Hacienda, LLC, a Nevada limited liability company; Savannah Falls, LLC a Nevada limited liability company; Silver Bowl, LLC, a Nevada limited liability company; Olympus Funding II, LLC, fka Stonecrest, LLC, a Nevada limited liability company; Trophy Land Holding, LLC, a Nevada limited liability company; Westwood II, LLC, a Nevada limited liability company; New Dirt, LLC, a Nevada limited liability company; Spanish Lake Vistas, LLC, a Nevada limited liability company, Warm Pines, LLC, a Nevada limited liability company, and Olympus Group, Inc, a Nevada corporation, Defendants.

Brent R. Phillips; Linda F. Phillips; Meridian Development, Inc. fka Trophy Homes, Inc., a Nevada company; Hacienda, LLC, a dissolved Nevada limited liability company; Silver Bowl, LLC, a Nevada limited liability company; Spring Mountain–Cimar-

ron, LLC, a dissolved Nevada limited liability company; Trophy Land Holding, LLC, a revoked Nevada limited liability company; and Westwood II, LLC, a dissolved Nevada limited liability company, Counterclaimants,

v.

Tousa Homes, Inc fka Engle Homes, Inc., a Florida Corporation; and Technical Olympic USA, Inc., a Delaware corporation, Counterdefendants.

No. CV–5–04–1215–RLHPAL.

United States District Court,
D. Nevada.

March 29, 2005.

Randolph L. Howard—006688, Kolesar & Leatham, Chtd., Ann L. Thomas—

005147, Kolesar & Leatham, Chtd., Las Vegas, NV, for Tousa Homes, Inc., Plaintiff.

Mark M. Jones—000267, Mark M. Jones, Ltd., Las Vegas, for Hacienda, LLC, Counter Claimant.

Andrew F. Dixon—008422, Beckley Singleton, Chtd., Las Vegas, NV, for New Dirt, LLC, Counter Claimant.

Dan R. Waite—004078, Beckley Singleton, Chtd., Las Vegas, NV, for Counter Claimant.

## ORDER

HUNT, District Judge.

Before the Court is Defendants/Counterclaimants' **Renewed Motion to Dismiss Eighth Cause of Action or, in the Alternative, Motion for a More Definite Statement** (# 11), filed October 19, 2004. Also before the Court is Defendants/Counterclaimants' **Renewed Motion to Dismiss Eighth Cause of Action or, in the Alternative, Motion for a More Definite**

Statement (# 38) filed November 8, 2004, which duplicated and superceded # 11.[1] The Court has also considered Plaintiff/Counterdefendant's Opposition (# 51), filed November 22, 2004, as well as Defendants/ Counterclaimants' Reply (# 56), filed December 3, 2004. Also before the Court is **Defendant Thomson's Motion to Dismiss Plaintiff's Fourteenth and Seventeenth Causes of Action** (# 45), filed November 9, 2004. The Court has also considered Plaintiff's Opposition (# 55), filed November 29, 2004, Defendant's Errata (# 58), filed December 3, 2004, and Defendant's Reply to Plaintiff's Opposition (# 66), filed December 10, 2004. Also before the Court is Plaintiff/ Counterdefendant's **Motion to Dismiss Defendants/Counterclaimants' Counterclaims or, in the alternative, for Partial Summary Judgment** (# 54), filed November 29, 2004. The Court has also considered Defendants/Counterclaimants' Opposition (# 68), filed December 14, 2004, as well as

1. "Counterclaimants" comprises all of the Defendants except for Defendants Savannah Falls, Stonecrest, New Dirt, Spanish Lake Vistas, Warm Pines, and Olympus Group. For purposes of evaluating the above-identified Motions, the Court will refer to the Counterclaimants as "Defendants/Counterclaimants," and to Plaintiff as "Plaintiff/Counterdefendant" when referred to in the context of the counterclaims; all other references to "Defendants" and "Plaintiff" are in their normal and aggregate meaning.

The Court notes that there is another named Counterdefendant, Technical Olympic USA, Inc. (hereafter Technical), and briefly addresses an intertextual argument between Plaintiff/Counterdefendant and Defendants/Counterclaimants regarding Technical. In their Opposition to Plaintiff/Counterdefendant's Motion to Dismiss, Defendants/Counterclaimants note (in footnote 1) that the Motion to Dismiss is brought only by Plaintiff/Counterdefendant, and not Technical. In Reply, Plaintiff/Counterdefendant asserts (in footnote 1) that its Motion was brought without Technical's participation because 1)

Technical was never served with process, and 2) the counterclaims that are the subject of Plaintiff/Counterdefendant's Motion to Dismiss ought to be dismissed as against Technical because they do not concern Technical. Two and a half months after Plaintiff/Counterdefendant filed its Reply, the Court received Technical's Joinder to Plaintiff/Counterdefendant's Motion to Dismiss (# 112, filed March 18, 2005).

The Court is aware that Technical has a Motion to Dismiss for Lack of Personal Jurisdiction (# 99, filed February 19, 2005) presently pending before the Court. The Court allows Technical's joinder in Plaintiff/Counterclaimant's Motion to Dismiss, though the determination of that Motion may render that joinder moot. While the Court will provisionally apply the foregoing discussion respecting the validity of counterclaims to both Plaintiff/Counterdefendant and Counterdefendant Technical, the Court notes that such application is subject to a (presently undetermined) finding that this Court may maintain personal jurisdiction over Technical.

Plaintiff/Counterdefendant's Reply (# 74), filed December 27, 2004.

## BACKGROUND

Plaintiff Tousa Homes (f/k/a Engle Homes and hereafter Tousa) is a Florida corporation with its principal place of business in Florida. On December 11, 2002, Plaintiff entered into an Asset Purchase Agreement (hereafter APA) with the several Defendants, all property development companies or those companies' principals or employees, for the purchase of those companies' assets and operations. The APA also provides for the indemnification of Plaintiff against breach on the part of the Sellers/Defendants, contemplates that the Buyer will be responsible for additional payments contingent upon the success of the acquired assets/operations, allows Plaintiff to set off damages against those contingent payments, and contains non-compete covenants. Coincidental to closing on the APA, Defendant B. Phillips entered into an Employment Agreement on February 6, 2003, providing for a substantial salary, an annual bonus, and the payment/provision of other benefits. The Employment Agreement also provides that, if B. Phillips is discharged without cause, he is entitled to continue receiving his salary and benefits through a period of three years from the closing of the APA, the period contemplated in the non-compete agreement. Finally, Plaintiff retained the services of Defendant Thomson, a former employee of Trophy involved in Trophy's land acquisition business, in a Consulting Agreement executed contemporaneous to the APA. Therein, Thomson agreed to provide Plaintiff with "land development and business advisory services" with respect to the assets/operations acquired by Plaintiff in the APA. The Consulting Agreement provided that Thomson was an independent contractor without benefits, without the ability to incur expenses, and without authority to bind the company. The APA closed on February 6, 2003, and both the Employment Agreement and the Consulting Agreement were executed on that day as well.

On August 31, 2004, Plaintiff filed its initial Complaint, with subsequent amendment on October 21, 2004. Plaintiff alleges that the various Defendants breached the terms of the APA by competing and conspiring to compete with Plaintiff, and asserts corresponding causes of action for breach of covenant of good faith and fair dealing, conversion of corporate opportunities on the part of B. Phillips, conversion of corporate assets, breach of fiduciary duty and contract by B. Phillips and Thomson, intentional interference with contract, breach of duty of loyalty, fraudulent or intentional misrepresentation, and conspiracy to breach contract by B. Phillips and Thomson. On October 19, 2004, Defendants/Counterclaimants (*see* footnote 1) filed a Counterclaim, amended on November 8, 2004, alleging that Plaintiff/Counterdefendant breached the APA by withholding contingent payments and discharging B. Phillips without cause, and assert corresponding causes of action for breach of contract, breach of good faith and fair dealing, breach of B. Phillips Employment Agreement, fraudulent or intentional misrepresentation, and request, inter alia, rescission and appointment of a receiver.

On October 19, 2004—and again on November 8, 2004, Defendants/Counterclaimants filed the instant Motion to Dismiss Eighth Cause of Action or, in the alternative, Motion for a More Definite Statement (## 11, 38). On November 9, 2004, Defendant Thomson filed the instant Motion to Dismiss Plaintiff's Fourteenth and Seventeenth Cause of Action (# 45). On November 29, 2004, Plaintiff/Counterdefendant filed the instant Motion to Dismiss

Defendants/ Counterclaimants Fifth, Eighth, and Ninth Counterclaim (# 54).

## DISCUSSION

### I. Defendants/Counterclaimants' Renewed Motion to Dismiss.

■ Defendants/Counterclaimants request that this Court dismiss Plaintiff/Counterdefendant's Eighth Cause of Action, alleging fraudulent/intentional misrepresentation. Defendants/Counterclaimants assert that Plaintiff/Counterdefendant has not pled this claim for fraud with sufficient particularity, as required under Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiff/Counterdefendant opposes Defendants/Counterclaimants' Motion, and asserts that its pleading, when read in its entirety, adequately puts Defendants/Counterclaimants on notice of the alleged fraud.

After reviewing the language in Plaintiff/Counterdefendant's First Amended Complaint, the Court finds that Plaintiff/Counterdefendant has not pled its claim of fraud with sufficient particularity, and directs Plaintiff/Counterdefendant to amend its Complaint to include such a claim. Rule 9(b) requires that, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." "Federal Rule of Civil Procedure 9(b) requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Cmty Hosp. v. Antelope Valley Dist.*, 940 F.2d 397, 405 (9th Cir.1991). Here, Plaintiff/Counterdefendant has alleged that certain of the Defendants made false representations regarding their intentions to comply with the non-compete provision of the Asset Purchase Agreement, but has not indicated when, where, and under what circumstances those false representations were made. It is not incumbent upon the Court nor the Defendants/Counterclaimants to hazard a guess as to the import of such answers.

■ Having found Plaintiff/Counterdefendant's Eighth Cause of Action to be insufficiently pled, the Court declines to impose so draconian a measure as dismissal, and will instead direct Plaintiff/Counterdefendant to amend its Complaint to further allege the details of its assertion of fraud in conformity with the detail specified in *Lancaster.* Plaintiff/ Counterdefendant shall have 30 (thirty) days from the filing date of this Order to so amend its Complaint, else the Cause of Action for fraud shall be stricken from its Complaint.

By way of housekeeping, the Court notes that Defendants/Counterclaimants have previously filed an identical motion (# 11) that remains outstanding. Having addressed the substance of that Motion above, the Court will deny (# 11) as moot.

### II. Defendant Thomson's Motion to Dismiss Plaintiff's Fourteenth and Seventeenth Causes of Action.

Defendant Thomson brings a Motion to Dismiss Plaintiff's fourteenth and seventeenth causes of action. Therein, Defendant Thomson asserts that the plain language of the contract between him and Plaintiff indicates that he was an independent contractor without any duty of loyalty to Plaintiff, and that Defendant Thomson's conduct was not subject to either an express or implied covenant not to compete. Plaintiff further alleges that Defendant Thomson is legally incapable of conspiring to breach the terms of the Asset Purchase Agreement (hereafter APA) because he is not a party to the APA, his alleged co-conspirators could not conspire to breach the APA as they were parties to the APA, and the conspiracy claim is duplicative of Plaintiff's Fifteenth Cause of Action.

Plaintiff opposes Defendant Thomson's motion, asserting that the nature of Thomas' contracted services for Plaintiff gave Thomas access to Plaintiff's strategies and property acquisition plans, and implicitly bound Plaintiff to be loyal to Plaintiff's interests as a result. Plaintiff also asserts that Nevada law does provide a cause of action for breach of contract against a party to that contract, and another for conspiracy to breach a contract where one of the parties to the contract is a co-conspirator.

**■  A.  Motion to Dismiss Breach of Contract Claim.** In its Fourteenth Cause of Action, Plaintiff asserts that Defendant Thomson was retained as a consultant to provide advice and assistance to Plaintiff regarding the acquisition of land for development, that Defendant Thomson had a duty of loyalty in that consultative capacity, and that Thomson breached that duty when he became aware of property that he evaluated and purchased for his own benefit and to the detriment of Plaintiff. In his Motion to Dismiss, Defendant Thomson asserts that his status as an independent contractor, his inability to bind the company through his actions, and the fact that his contract was not subject to a non compete agreement indicate that his relationship with Plaintiff was not one of trust and confidence from which a duty of loyalty properly arises. In its Opposition, Plaintiff asserts that the nature of Defendant Thomson's contractual services implicitly impose a duty of loyalty upon Defendant Thomson with respect to land acquisition activities.

**■**  Plaintiff asserts that Defendant Thomson owes it a duty of loyalty emanating from the nature of the contract. While an employee generally owes his employer a duty of loyalty respecting prospective business opportunity, *see White Cap Indus., Inc. v. Ruppert,* 119 Nev. 126, 67 P.3d 318 (2003) (quoting Restatement (Second) of Agency § 381 (1958)), an independent contractor owes no such duty to an employer unless such a duty is imposed by contract or there exists a relationship of special trust and confidence between the independent contractor and the employer, *see Northeast Ohio College of Massotherapy v. Burek,* 144 Ohio App.3d 196, 759 N.E.2d 869 (2001). The consulting agreement unambiguously defines Defendant Thomson as an independent contractor, and takes pains to disclaim an employer/employee relationship; accordingly, the Court must determine if, as a matter of law, the contract mandates a duty of loyalty, or if a relationship of "special trust and confidence" existed between Plaintiff and Defendant Thomson. After reviewing the Consulting Agreement between Defendant Thomson and Plaintiff, the Court does not discern any provision imposing an explicit duty of loyalty. Turning to the question of whether the contract created a relationship of special trust and confidence between Plaintiff and Defendant Thomson such that a duty of loyalty arose between the parties, the Court finds no evidence to support Plaintiff's arguments. While the Consulting Agreement does state that Defendant Thomson's intimate familiarity with Trophy's land acquisition business makes his "continual involvement with the Company after the consummation of the Transaction [ ] critical to the successful operation of the Company's business," *see* Page 1, *BACKGROUND* ¶ 3, the Consulting Agreement contains several provisions limiting the discretion of Defendant Thomson. Specifically: Defendant Thomson may not incur any expenses without the written consent of the Company's Las Vegas president (Page 3, ¶ 6); Defendant Thomson's title is explicitly defined as "Independent Contractor" (Page 3, ¶ 7); and Defendant Thomson has no authority to enter into contracts that bind the Company or create obligations on the part of the

Company without the prior written authorization of the Company (Page 3, ¶ 7.1). In addition, there is no non-compete provision within the Consulting Agreement that restricts Defendant Thomson's actions in any way.

Though Plaintiff's work product may have been "critical" to the continuity of those operations acquired by Plaintiff, the Court discerns no contract-created relationship of "special trust and confidence" between Plaintiff and Defendant Thomson; rather, it would appear that Plaintiff desired to maintain a level of control over Defendant Thomson's actions that indicate the absence of such sentiment on the part of Plaintiff. In this respect, Plaintiff's reliance upon *Transnational Ins. Co. v. Rosenlund,* 261 F.Supp. 12 (D.Or.1966) as persuasive authority is misplaced. In *Transnational,* the independent contractors acted explicitly as agent sellers for the principal insurance company, had broad discretionary authority to bind the principal insurance company, agreed by contract not to compete with the principal insurance company, and explicitly assumed a contractual duty to act always in the principal insurance company's best interests. It is against that background that those independent contractors "were representatives and were legally bound to act solely for the benefit of the principal in all matters covered by the contract," and that such contractors "are subject to the duties of loyalty and obedience to the wishes of the principal" when they undertake to promote the business of the principal; the same result does not obtain in the absence of such duties. Also of note is that all of the foregoing language addressed the implied "duty of good faith" in the performance of explicit contractual duties; that

holding applies imperfectly at best when applied to a supposed duty of loyalty allegedly arising from the fairly opaque contractual duties contained in a consulting agreement.

While a relationship of special trust and confidence may arise in extra-contractual circumstances, none have been alleged. Plaintiff asserts in its Opposition that it is "reasonable" that Defendant Thomson's advisory position granted him access to confidential information regarding land that Plaintiff was considering, as well as Plaintiff's plans for future development. Regardless of the reasonableness of such a supposition, it is nowhere asserted in Plaintiff's Complaint, and is not properly presented, therefore, in an opposition.[2] Having failed to demonstrate that a duty of loyalty arose under the Consulting Agreement's explicit terms, by inference from that relationship established under the Consulting Agreement, or to allege any other factual scenario where such a duty arose, the Court will grant Defendant Thomson's Motion to Dismiss Plaintiff's Fourteenth Cause of Action.

**B. Motion to Dismiss Conspiracy Claim.** In its Seventeenth Cause of Action, Plaintiff alleges that Defendants B. Phillips, L. Phillips, and Thomson (hereafter Conspiracy Defendants) conspired to/did usurp corporate opportunities belonging to Plaintiff, and that these Conspiring Defendants also conspired to/did breach the non-compete provisions of the Asset Purchase Agreement (hereafter APA). In his Motion to Dismiss, Defendant Thomson asserts that this Cause of Action should be dismissed because: he is legally incapable of conspiring to usurp Plaintiff's corporate opportunities because he owed no fiduciary duties to Plaintiff; and he is legally incapa-

---

**2.** In fact, the language utilized by Plaintiff's Fourteenth Cause of Action appears to controvert the assertion; Plaintiff claims that Thomson acquired property information either "in-

dividually or in conjunction with B. Phillips," nowhere mentioning the possibility now asserted by Plaintiff.

ble of conspiring to breach the terms of the APA because he is not a party to the APA, his alleged co-conspirators could not conspire to breach the APA as they were parties to the APA, and the conspiracy to breach claim is duplicative of Plaintiff's Fifteenth Cause of Action (Intentional Interference with Contract).

■ After considering the pleadings and the caselaw, the Court will deny Defendant's Motion to Dismiss Plaintiff's Seventeenth Cause of Action. With respect to Plaintiff's allegation that Defendant Thomson conspired to breach the APA, the Court finds Defendant Thomson's arguments unavailing. After reviewing the decision in *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 109 Nev. 1043, 862 P.2d 1207 (1993), this Court must conclude that the Nevada Supreme Court allows a conspiracy claim to lie where a contracting party and third parties conspire to frustrate the purpose of a contract. Defendant Thomson's assertions to the contrary are nonsensical in light of the Nevada Supreme Court's holding in *Hilton;* there simply is no other way for this Court to rationally construe that decision.

In *Hilton,* Plaintiff/Appellant Hilton entered into a contract with Dynamic Duo, a Nevada corporation formed by promoters Lewis and King, wherein Hilton would host a "Unification Series" of boxing matches designed to select one champion from among those recognized by three different boxing organizations. Hilton asserted that the contracting parties contemplated that Spinks, a heavyweight boxer recognized as a champion by one of the organizations, would be available to fight in the course of the Series. Spinks resigned his championship title prior to the Series, becoming ineligible to participate therein, Hilton subsequently brought suit alleging, inter alia, that Dynamic Duo and other non-parties to the contract induced Spinks to forfeit his title, and that all of these individuals were liable under a theory of civil conspiracy to interfere with the contract's completion. Against that backdrop, and in the context of considering Plaintiff's civil conspiracy claims, the *Hilton* Court held:

It is apparent that Lewis would have had great difficulty exercising bad faith to the point of breaching the implied covenant of good faith and fair dealing without the cooperation of others. Although the written contract was between Duo and Hilton, it is most unlikely that arrangements for circumventing the Unification Series and producing matches of greater profit and appeal outside the Series could have materialized solely through the dictates of Lewis. If Hilton is able to prove that the implied contractual covenant of good faith and fair dealing was breached, the jury will then be free to also determine whether the breach resulted from tortious acts of conspiracy and interference involving the other named defendants. Hilton is therefore entitled to reinstate its tort claims against the former defendants; however, any recovery on such claims would be subject to a threshold determination by the trier of fact that there was a breach of the implied covenant of good faith and fair dealing.

. . . . .

... Anyone who intentionally conspired and acted with Duo or Lewis to remove Spinks from the Unification Series or otherwise promote matches that were contrary to the intendment of the parties under the Hilton/Duo contract in order to reap greater financial dividends at Hilton's expense could be held liable in tort.

*Id.* at 1048–49, 862 P.2d 1207.

■ The above-cited language unequivocally holds that, in Nevada, a nonparty to a contract may be liable for conspiring with a party to the contract to

breach the terms of that contract, so long as there is a breach of the contract by that party to the contract.[3] That legal conclusion renders Defendant Thomson's assertion that he is legally incapable of conspiring to breach the terms of the APA because he is not a party to the APA—and that his alleged co-conspirators could not conspire to breach the APA as they were parties to the APA—nugatory and of no consequence. In addition, the Court agrees with Plaintiff that the elements of its civil conspiracy claim are distinct from those of its intentional interference with contract claim, and do not merit dismissal on the assertion that the two are duplicative. That conclusion is consonant with the *Hilton* Court's ruling, which reinstated causes of action against all the defendants for both conspiracy to interfere with contract and intentional interference with contract. Accordingly, this Court is required, while sitting in diversity, to deny Defendant Thomson's Motion to Dismiss Plaintiff's allegations that he is liable in civil conspiracy for breach of the non-compete provision of the Asset Purchase Agreement between Plaintiff and B. Phillips and L. Phillips.

■ With respect to Defendant Thomson's Motion to Dismiss Plaintiff's allegations that Thomson conspired to usurp Plaintiff's corporate opportunities, Defendant Thomson has pointed the Court to no authority, mandatory or persuasive, supporting his assertion that a non-fiduciary cannot be liable for conspiracy with another owing fiduciary duties to breach those fiduciary duties.[4] The Court discerns no policy consideration that counsels against allowing liability for such civil conspiracy, and finds no indication in the case law that the Nevada Supreme Court would limit the scope of the civil conspiracy cause of action in Nevada to preclude such liability. Accordingly, the Court will deny Defendant Thomson's Motion to Dismiss. The Court notes that, as with the above-outlined discussion of civil conspiracy to breach a contractual provision, liability for conspiracy to usurp corporate opportunities is premised upon finding that there was an actual breach of fiduciary duties by those owing such duties—here B. Philips and L. Philips—before any liability for conspiracy attaches to Thomson. Regardless of the outcome of that future inquiry, it appears to the Court that a Motion to Dismiss the claim is, at the least, premature at this juncture in the litigation.

### III. Plaintiff/Counterdefendant's Motion to Dismiss Defendants/Counterclaimants' Fifth, Eighth, and Ninth Amended Counterclaims Or, In the Alternative, For Partial Summary Judgment.

■ **A. Alternative Motion for Summary Judgment.** In its Motion to Dismiss, Plaintiff/Counterdefendant asks that its Motion to Dismiss be treated, in the alternative, as a Motion for Summary Judgment, and subsequently includes several exhibits. In a few short sentences (and in the absence of a Rule 56(f) Affidavit), Defendants/Counterclaimants oppose treating the Motion as one for Partial Summary Judgment, asserting that Defendants/Counterclaimants are not on sufficient notice that Plaintiff/Counterdefendant's motion may be considered under the Summary Judgment standard and that the relative newness of this litigation counsels against treating the issue as one of summary judgment at this stage in the litigation.

---

**3.** ... notwithstanding Defendant's "creative" interpretation of the import of *Hilton,* that would reach a contrary result.

**4.** After conducting its own research, the Court was unable to find a single case on point that either supported or refuted Defendant Thomson's legal assertion.

While the Court is underwhelmed with Defendants/Counterclaimants' spare articulation of its argument against application of the summary judgment standard at this time, the Court elects to consider Plaintiff/Counterdefendant's motion under the Motion to Dismiss standard. Plaintiff/Counterdefendant filed its Motion on November 29, 2004, or less than three months after Plaintiff/Counterdefendant filed its original Complaint; given that even the preliminary stages of discovery had yet to be mapped out when the Motion was filed, any attempt by Plaintiff/Counterdefendant to assert facts in a summary judgment proceeding is premature, to say the least. The Court will therefore deny Plaintiff/Counterdefendant's Alternative Motion for Partial Summary Judgment as premature, but does so without prejudice. The Court proceeds to evaluate Plaintiff/Counterdefendant's motion under the Motion to Dismiss standard.

**B. Fifth Amended Counterclaim.** In their Fifth Amended Counterclaim for Relief, Defendants/Counterclaimants allege that Plaintiff/Counterdefendant failed to pay Defendants/Counterclaimants payments due under the APA, and that this failure constituted a material breach of the terms of the APA. Defendants/Counterclaimants further allege that Plaintiff/Counterdefendant acted in bad faith by wrongfully firing B. Phillips, and conclude that the termination of B. Phillips and Plaintiff/Counterdefendant's failure to pay those amounts due under the APA entitle Defendants/Counterclaimants to rescission of the APA. In its Motion to Dismiss, Plaintiff/Counterdefendant asserts that the withheld payment by Defendants/ Counterclaimants was a contingent payment, which payment the APA provides may be withheld as a potential setoff in any dispute, and further asserts that the APA states that such a withholding may NOT constitute material breach—regardless of whether the withholding is justified in the end—so long as the contingent payment is withheld in good faith. Plaintiff/Counterdefendant further alleges that the APA allows for the termination of B. Phillips for cause, thereby precluding Defendants/Counterdefendants' assertion that his termination may form the basis for rescission. Defendants/Counterclaimants assert that there is no mandatory authority holding that there must be material breach in order to allow rescission, only that performance under the contract has been partial.[5] Defendant/Counterclaimants further assert that whether Plaintiff/Counterdefendant's failure to pay under the APA is a material breach depends upon whether Plaintiff/Counterdefendant acted in good faith, and that Defendants/Counterclaimants have specifically alleged that Plaintiff/Counterdefendant acted in bad faith in withholding payment under the APA and fired B. Philips on a basis other than cause.

Taking the nonmoving parties' allegations as true for purposes of this Motion, the Court finds adequate the claim that Plaintiff/Counterdefendant acted in bad faith in withholding payment, and that Plaintiff/Counterdefendant fired B. Philips for a reason other than cause, both in violation of the contractual agreement; that conclusion permits a finding of material breach that would allow Defendants/Counterclaimants to rescind the contract.[6] Accordingly, Plaintiff/Counter-

---

5. The Court disposes of Plaintiff/Counterdefendant's claim without addressing the merits of this assertion.

6. The Court reiterates that this conclusion is for purposes of this motion only, and that a far more detailed discussion (and presentation of far more convincing argument and evidence) is necessary to determine whether

defendant's Motion to Dismiss Defendants/Counterclaimants' Fifth Amended Counterclaim will be denied.

■ **C. Eighth Amended Counterclaim.** In their Eighth Amended Counterclaim for Relief, Defendants/Counterclaimants assert: that Plaintiff/Counterdefendant is in the process of selling many of the assets identified in the APA; that Plaintiff/Counterdefendant has not disclosed to its shareholders that it has fired B. Philips; and that Plaintiff/Counterdefendant's stock (which is publicly traded) will substantially decrease in value once the nature of this litigation is disclosed, which disclosure will result in substantial devaluation of Plaintiff/Counterdefendant's assets. Based on the foregoing, Defendants/Counterclaimants request that this Court appoint a receiver over Plaintiff/Counterdefendant's assets for distribution to Defendants/Counterclaimants. In its Motion to Dismiss, Plaintiff/Counterdefendant asserts that Defendants/Counterclaimants have failed to meet the requirements of NRS 32.010 and that there are adequate remedies at law, specifically: that Defendants/Counterclaimants have failed to allege that Plaintiff/Counterdefendant would be unable to pay any judgment that might be awarded; that Defendants/Counterclaimants are entitled only to the relatively small payments remaining under the APA, and not a broader division of Plaintiff/Counterdefendant's assets; and that appointment of a receiver over the operations of a publicly traded going concern would be unwieldly. Plaintiff/Counterdefendant notes that it has

filed a motion to deposit all of the payments outstanding under the APA with the Court during the pendency of this litigation, which option would render moot all of Defendants/Counterclaimants' concerns.[7] Plaintiff further asserts that its purchase of Trophy (and the development companies) under the APA was not a "purchase of property," and therefore the statute is inapposite. In Opposition, Defendants/Counterclaimants assert that they have met the requirements of NRS 32.010, and that, because land is a unique asset, the funds that Plaintiff/Counterdefendant seeks to deposit with the Court to cover any damages are inadequate.

NRS 32.010 provides, in relevant part,

A receiver may be appointed by the court in which an action is pending, or by the judge thereof:

1. In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property or fund to his claim, or between partners or others jointly owning or interested in any property or fund, on application of the plaintiff, or of any party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured.

After considering the matter, the Court will grant Plaintiff/Counterdefendant's Motion to Dismiss Defendants/Counterclaimants' Eighth Amended Counterclaim. After reviewing the Asset Purchase Agreement, the Court concludes that what Plaintiff/ Counterdefendant purchased

---

Defendants/Counterclaimants are actually entitled to rescission.

**7.** The Court notes that Magistrate Judge Leen granted Plaintiff/Counterdefendant's request

in an Order entered February 17, 2005 (# 103), and that Plaintiff/Counterdefendant has since deposited the outstanding payment with the Court.

from Defendants/Counterclaimants was the core of a property development business. In the APA's Background section, the parties stated that "Buyer desires to acquire from Sellers, and Sellers desire to sell to Buyers, substantially all of the assets of Trophy and the Development Companies on the terms and subject to the conditions set forth in this Agreement." The APA specifies that the Seller will convey to the Buyer "all of the assets, properties, and business ... owned, used, or usable by Seller in the conduct of the Business as the same shall exist on the Closing Date...." The parties use the word "Business" here as a term of art, which is defined elsewhere in the APA as "the construction, building, producing, marketing and selling of Homes and the development of Development Property as presently conducted by Trophy and the Development Companies." The assets necessary to conduct the Business acquired by Plaintiff and which are transferred by the APA to the Buyer/Plaintiff are listed as: $1,700,000 in cash and accounts; development property and leases; tangible personal property; accounts receivable; assumed contracts; governmental authorization; the Business records and promotional material, in various formats, that are "used or useful" to run the Business; trade secrets; insurance benefits; promotional allowances; tax assets; all materials possessed and associated with Seller's assets; right to receive Seller's correspondences relating to the Business; all extant third-party claims; and all rights to deposits and prepaid expenses associated with the Assets or the Business.

The Court finds, as a matter of law, that the above-outlined purposes driving the APA, the outlined intent of the parties to the APA, and the type of assets conveyed by the APA indicate that the best characterization of the transaction is the conveyance of the core of a property development business from one party to another, and not the purchase of property. Accordingly, the Court finds that the transaction falls outside the purview of NRS 32.010, and that Defendants/Counterclaimants' claim requesting appointment of a receiver fails as a matter of law. To hold otherwise would greatly expand the application of NRS 32.010, and would have the significant policy implication of authorizing a receivership any time there is a contractual dispute involving the acquisition of a company that owns real property assets.

■ **D. Ninth Amended Counterclaim.** In its Ninth Amended Counterclaim for Relief, Defendants/Counterclaimants assert that Plaintiff/Counterdefendant made fraudulent or intentional misrepresentations concerning its intentions to make payments under the APA and to fulfill its employment agreement with B. Phillips. In its Motion to Dismiss, Plaintiff/Counterdefendant asserts that these allegations of fraud have not been pled with sufficient particularity, pursuant to Rule 9 of the Federal Rules of Civil Procedure.

Again, Rule 9(b) requires that, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." "Federal Rule of Civil Procedure 9(b) requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Cmty Hosp. v. Antelope Valley Dist.*, 940 F.2d 397, 405 (9th Cir.1991). Here, Defendants/Counterclaimants have alleged that Plaintiff made false representations regarding its intention to comply with the payment provisions of the Asset Purchase Agreement and with the employment agreement respecting B. Phillips, but have not indicated when, where, and under what

circumstances those false representations were made. As previously noted, it is not incumbent upon the Court nor the Plaintiff/Counterdefendant to hazard a guess as to the import of such answers.

Having found Defendants/Counterclaimants' Ninth Amended Counterclaim for Relief to be insufficiently pled, the Court declines to grant the Motion to Dismiss, and will instead direct Defendants/Counterclaimants to amend their Counterclaim to further allege the details of their assertion of fraud in conformity with the requirements set out in *Lancaster*. Defendants/Counterclaimants shall have 30 (thirty) days from the filing date of this Order to so amend their Counterclaim, else the Ninth Counterclaim for fraud shall be stricken from the Counterclaim.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants/Counterclaimants' **Renewed Motion to Dismiss Eighth Cause of Action or, in the Alternative, Motion for a More Definite Statement (# 38)** is GRANTED; Plaintiff/Counterdefendant shall have thirty (30) days from the filing date of this Order to amend its Complaint to plead with greater specificity its Eighth Cause of Action in his Complaint, alleging fraudulent/intentional misrepresentation. If Plaintiff/Counterdefendant fails to amend his Complaint within the prescribed time period, Plaintiff/Counterdefendant's Eighth Cause of Action shall be stricken.

IT IS FURTHER ORDERED that **Defendants/Counterclaimants' Motion to Dismiss Eighth Cause of Action ... (# 11)** is DENIED AS MOOT.

IT IS FURTHER ORDERED that **Defendant Thomson's Motion to Dismiss Plaintiff's Fourteenth and Seventeenth Causes of Action (# 45)** is GRANTED IN PART and DENIED IN PART;

• Defendant Thomson's Motion to Dismiss Plaintiff's Fourteenth Cause of Action (Breach of Contract) is GRANTED;

• Defendant Thomson's Motion to Dismiss Plaintiff's Seventeenth Cause of Action (Conspiracy) is DENIED;

IT IS FURTHER ORDERED that **Plaintiff/Counterdefendant's Motion to Dismiss Defendants/Counterclaimants' Fifth, Eighth, and Ninth Amended Counterclaims Or, In the Alternative, For Partial Summary Judgment (# 54)** is GRANTED IN PART and DENIED IN PART;

• The Court evaluates Plaintiff/Counterdefendant's Motion under the Motion to Dismiss Standard;

• Plaintiff/Counterdefendant's Motion to Dismiss Defendants/Counterclaimants' Fifth Amended Counterclaim is DENIED;

• Plaintiff/Counterdefendant's Motion to Dismiss Defendants/Counterclaimants' Eighth Amended Counterclaim is GRANTED;

• Defendants/Counterclaimants shall have thirty (30) days from the filing date of this Order to amend its Counterclaim to plead with greater specificity their Ninth Amended Counterclaim, alleging fraudulent/intentional misrepresentation. If Defendants/Counterclaimants fail to amend their Counterclaim within the prescribed time period, Defendants/Counterclaimants' Ninth Cause of Action shall be stricken.