*1153
 
 OPINION
 

 Per Curiam:
 

 In December of 1994, Robert Rains contracted to sell a parcel of property in Henderson, Nevada, to Notre Dame Development, Inc. (hereinafter “Notre Dame”). The contract consisted of an
 
 *1154
 
 “Offer and Acceptance Agreement” as well as a “Counter Proposal.”
 

 The agreement provided that time was of the essence and that Rains would retain two and one-half acres of the parcel. It also stated that “[e]xact dimensions and legal description and recordation of a parcel map, at Buyer’s expense, to be completed prior to the Close of Escrow.” The parties also agreed that escrow would close “90 days following Buyer’s removal of all contingencies.”
 

 The contract provided for a “due diligence” period during which Notre Dame had the “opportunity to investigate all matters relating to title of the property, the uses to which it may be put, to conduct and review all tests and surveys, and to institute and complete all studies . . . .” Under that clause, Notre Dame could
 

 terminate [the] Agreement for any reason whatsoever by delivering a written notice of termination to the escrow officer, within (45) days from the Buyer’s receipt of a preliminary title report and commitment in Buyer’s name. . . . If the Buyer does not give notice of termination on or before the end of the Due Diligence Period the Buyer shall be deemed to have approved all tests and investigations undertaken by the Buyer and the parties shall thereafter be obligated to perform the terms and conditions of this Agreement and the title company shall pay and release to the Seller the earnest money in the amount of $10,000.
 

 Both parties agree that the due diligence period expired on April 12, 1995, at which time they became “obligated to perform the terms and conditions of [the] Agreement.” The escrow company then sought authorization to disburse the earnest money deposit. The written authorization included language stating that “Buyer and Seller acknowledge ... the recordation of a parcel map at Buyer’s expense is a condition precedent to the close of escrow.” Both Notre Dame and Rains signed the Authorization. Under the contract, Notre Dame had the option of extending the close of escrow for four thirty-day periods “for $10,000.00 deposit per extension.”
 

 The contract provided that Rains was to “cooperate and assist Buyer in obtaining tentative and final map approvals from the City of Henderson.” On February 22, 1995, the president of Notre Dame, Andy Flaherty, wrote a letter to Rains informing him that Flaherty would like to start on a parcel map as soon as Rains notified him of the parameters of the 2.5 acres that Rains wished to retain. Flaherty insists that Rains did not respond to this request; thus, he sent further requests for the dimensions on March 24, 1995, and again on March 31, 1995. He claims that he also made several verbal requests for the dimensions. Rains
 
 *1155
 
 contends that he verbally responded to each of Notre Dame’s requests. He claims he explained to Flaherty that the “retained land would be bounded by Stephanie to the East, and was to be configured so as to aiford the maximum frontage on Stephanie, between the Northeast property corner and Pantera Street, with 2.5 net acres.”
 

 On May 26, 1995, Notre Dame prepared a parcel map and NGA #2 Limited Liability Company (hereinafter “NGA”), sent it to Rains for his approval.
 
 [1]
 
 The map indicated that Rains would retain 2.5 acres from the gross acreage of the property. On July 5, 1995, Rains objected to the map and provided specific dimensions of the portion of the property he wished to retain.
 
 [2]
 

 On July 6, 1995, Flaherty wrote a letter to Rains stating:
 

 As we discussed yesterday, although our agreement provides that escrow shall close [90] days
 
 [3]
 
 after the removal of all contingencies (the recording of the parcel map being one such contingency), NGA shall close escrow as soon as practical after it is notified that the parcel map has recorded. Any delay in closing escrow is only due to delays in preparing and processing the parcel map, which delays have been beyond our control. Therefore, assuming that the escrow closes as provided above, no formal extension of the escrow nor the payment of any extension fees is currently required. Of course, if NGA requires any extension of escrow after the parcel map is recorded, it shall pay the necessary extension fees required by the Agreement.
 

 Rains did not respond to the letter.
 

 On July 20, 1995, NGA submitted the parcel map to the City of Henderson (hereinafter “the City”). The City returned the map to NGA and requested certain changes. NGA had the changes made and sent the map to Rains on September 26, 1995, for his signature. Rains signed the map, and it was resubmitted to the City on September 28, 1995.
 

 On November 1, 1995, the City requested additional changes.
 
 *1156
 
 These were made and the map was submitted to the City for the third time on November 2, 1995. On November 6, 1995, Rains directed the escrow agent to immediately cancel escrow. He claimed that NGA breached the contract because escrow failed to close in accordance with the agreement. On November 8, 1995, Flaherty directed the agent to continue with the escrow. The agent then informed Flaherty and Rains that he would hold the file open until he received mutually written instructions or a court order instructing him on the conditions under which he was to proceed.
 

 On December 8, 1995, NGA was notified that the map had been approved by the City and would be released for recordation as soon as an improvement bond was posted. NGA’s general manager stated that, given the dispute, the bond would be posted upon a judicial declaration that the contract was enforceable.
 

 NGA claims that it expended time and money on the property after the date Rains claims escrow should have closed. It created a parcel map, and worked to get the property rezoned as of August 1995. NGA claims that it also investigated and remedied an improper excavation that took place on the property, and that it informed Rains of its post-July 12th activity, either verbally or by fax, and Rains did not object.
 

 NGA filed a complaint in district court seeking specific performance and then filed a notice of lis pendens in the Clark County Recorder’s Office. The district court determined that NGA breached the contract and granted Rains’ countermotion for summary judgment. It also granted Rains’ motion to expunge the lis pendens.
 

 DISCUSSION
 

 NGA claims that the district court improperly granted Rains’ motion for summary judgment because there were genuine issues of material fact to be resolved at trial. We agree.
 

 NRCP Rule 56(c) provides that summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.”
 

 The burden of establishing the non-existence of any genuine issue of fact is on the movant. Pacific Pools Construction Co. v. McClain’s Concrete Inc., 101 Nev. 557, 559, 706 P.2d 849, 851 (1985). The burden is discharged by demonstrating that there is an absence of evidence supporting one or more of the prima facie elements of the non-moving party’s case. Celotex Corp. v. Catrett, 477 U.S. 317, 391 (1986).
 

 
 *1157
 
 In deciding whether summary judgment is appropriate, the evidence must be viewed in the light most favorable to the party against whom summary judgment is sought; the factual allegations, evidence, and all reasonable inferences in favor of that party must be presumed correct. Ferreira v. P.C.H. Inc., 105 Nev. 305, 306, 774 P.2d 1041, 1042 (1989). A litigant has a right to a trial when there remains the slightest doubt as to remaining issues of fact. Clauson v. Lloyd, 103 Nev. 432, 435, 743 P.2d 631, 632 (1987). “However, the non-moving party must, by affidavit or otherwise, set forth specific facts demonstrating the existence of a genuine issue for trial or have summary judgment entered against him.” Posadas v. City of Reno, 109 Nev. 448, 452, 851 P.2d 438, 442 (1993).
 

 The contract contained a “due diligence” provision which allowed the buyer to terminate the agreement, with notice, anytime within forty-five days from the Buyer’s receipt of a “preliminary title report and commitment in [the] Buyer’s name.” The parties concede that the due diligence period expired and that they were bound by the contract on April 12, 1995.
 

 The issues to be resolved on appeal thus center around three provisions: (1) that escrow would close “90 days following removal of all contingencies;” (2) that “[e]xact dimensions and legal description and recording of a parcel map, at buyer’s expense, [was] to be completed prior to the Close of Escrow”; and (3) that closing of escrow could be extended.
 

 Because the agreement requires closing within ninety days following the removal of all contingencies, the issue is whether the failure to record the map involved a “contingency,” or simply a “condition precedent” to closing.
 

 NGA argues that recording the parcel map was a contingency to be removed before the ninety-day grace period could begin to run. It also argues, in the alternative, that even if recordation cannot properly be interpreted as a contingency, the district court erred in applying the law regarding conditions precedent. It claims that the contract contained a condition precedent (i.e., recordation of the map) that had not yet been performed, and thus, escrow was not due to close.
 

 Rains argues that recordation was not a contingency. He claims that all contingencies were removed at the expiration of the due diligence period when the parties became bound by the contract. He contends that NGA had a duty at that point to either perform the conditions precedent (recording the map) within the next ninety days or pay for an extension of the closing date. Thus, Rains argues that NGA was obliged under the contract to record a
 
 *1158
 
 map by July 12, 1995, or pay $10,000 for a thirty-day extension of the closure date. Since NGA did neither, Rains claims NGA breached the contract.
 

 1.
 
 Was recordation a contingency or a condition precedent to
 
 closing?
 

 The district court concluded that recordation of the map was not a contingency and, thus, the ninety-day grace period began to run on April 12, 1995. It further concluded that NGA breached the contract by failing to perform the condition precedent on or before July 12, 1995, the date set for closing.
 

 Construction of a contractual term is a question of law and this court “is obligated to make its own independent determination on this issue, and should not defer to the district court’s determination.” Clark Co. Public Employees v. Pearson, 106 Nev. 587, 590, 798 P.2d 136, 137 (1990). In interpreting a contract, “the court shall effectuate the intent of the parties, which may be determined in light of the surrounding circumstances if not clear from the contract itself . . . .” Davis v. Nevada National Bank, 103 Nev. 220, 223, 737 P.2d 503, 505 (1987) (citations omitted).
 

 The parties in this case characterized recordation of the map in the April 12, 1995 “Authorization to Disburse Funds,” as a
 
 condition precedent
 
 to closing. That description was made four months after they entered into the contract that specifically stated the ninety-day grace period would begin to run after the removal of all
 
 contingencies.
 
 Thus, if the parties had originally intended for recordation to be a contingency, they could have labeled it as such in the Authorization. Accordingly, we conclude that the parties considered all contingencies removed when they became bound by the contract on April 12, 1995, and that the district court was correct in so finding.
 

 2.
 
 Did the district court properly apply the law of conditions
 
 precedent?
 

 NGA argues, in the alternative, that escrow can only close upon the performance of the condition precedent, irrespective of any time limitation. Rains argues that the provision requiring recordation of the parcel map did not give NGA an unlimited amount of time to record the map and circumvent the terms of the contract.
 

 A condition precedent to an obligation to perform calls for the
 
 *1159
 
 performance of some act after a contract is entered into, upon which the corresponding obligation to perform immediately is made to depend. New Orleans v. Texas & Pacific Railway, 171 U.S. 312, 333 (1897);
 
 see also
 
 17A Am. Jur. 2d
 
 Contracts
 
 § 469 (1997).
 

 In Goldston v. AMI Investments, Inc., 98 Nev. 567, 655 P.2d 521 (1982), this court held that:
 

 [a] seller of land pursuant to a contract of sale is justified in cancelling the contract if the purchaser has failed to perform a material part of the contract which is a condition concurrent or precedent to the seller’s obligation to perform. . . . Failure to tender timely performance can constitute a material breach of contract. . . . Additionally, if neither party tenders performance by the date set for closure under a contract that provides time is of the essence, the duties of both parties are discharged by passage of that date.
 

 Id.
 
 at 569, 655 P.2d at 523 (citations omitted).
 

 Where the escrow agreement specifies a definite time for performance, performance must be made within the time limit of the agreement, and the escrow agent is without power to deliver a deed thereafter. Pothast v. Kind, 24 P.2d 771, 772 (Cal. 1933). “It is well settled that performance must be made within the time limit of the escrow agreement.”
 
 Id.
 

 In this case, time was of the essence and NGA failed to timely record the parcel map before the date set for closing. Thus, under
 
 Goldston,
 
 NGA’s failure to record by July 12, 1995, and failures thereafter to obtain extensions, operated prima facie as a discharge of Rains’ duty to convey the property.
 
 See
 
 Roberts v. Osburn, 589 P.2d 985, 989 (Kan. Ct. App. 1979) (holding that legal title does not pass to the grantee until all conditions are performed and the deed is released from escrow).
 

 The issue then becomes whether NGA was relieved from complying with the July closing deadline under theories of waiver or estoppel.
 

 Estoppel
 

 The doctrine of “[ejquitable estoppel operates to prevent a party from asserting legal rights that, in equity and good conscience, they should not be allowed to assert because of their conduct.” Nevada State Bank v. Jamison Partnership, 106 Nev. 792, 799, 801 P.2d 1377, 1382 (1990).
 

 
 *1160
 
 NGA argues that there are questions of fact regarding whether Rains was estopped to assert that it breached the contract. According to NGA, Rains remained silent after the July deadline, and continued to act as if the contract had not been breached until he attempted to cancel escrow in November. NGA also contends that the recordation delay was caused in part by Rains’ breaches of the contractual requirement that he assist in obtaining map approval from the City. Thus, NGA argues that questions of fact exist as to whether Rains should be estopped from claiming that NGA breached the contract.
 

 1.
 
 Silence
 

 “[T]his court has noted that silence can raise an estoppel quite as effectively as can words.” Cheqer, Inc. v. Painters & Decorators, 98 Nev. 609, 614, 655 P.2d 996, 998-99 (1982).
 

 The elements of estoppel are as follows:
 

 (1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped.
 

 Id.
 
 “Whether these elements are present, so that the doctrine of equitable estoppel should be applied, depends upon the particular facts and circumstances of a given case.”
 
 Id.
 

 There is evidence that Rains knew NGA was working to record the map with the City after the July deadline. Rains admits that he received NGA’s July 6th letter stating its belief that escrow would not close until after it removed the contingency of recording the map. Further, Rains signed the draft map in September of 1995 for resubmission to the City. Thus, there is a question of fact regarding whether Rains was apprised of the true facts surrounding NGA’s belief regarding the validity of the contract after the July deadline.
 

 Additionally, because Rains admitted receiving the July 6th letter, but failed to respond, we conclude that whether Rains knew NGA would act on his “silence” is also a question of fact. NGA also presented evidence that it was ignorant of the true state of facts and that it relied on Rains’ conduct to its detriment in expending time and money on the property after the July deadline.
 

 
 *1161
 
 We hold that NGA set forth prima facie evidence in support of each of the elements of its estoppel theory. Thus, summary judgment was inappropriate.
 

 2.
 
 Rains’ Breach of Contract
 

 NGA also claims Rains should be estopped from asserting its breach as a defense because Rains failed to assist it in filing the map and actually caused its delay.
 

 “[A]n individual who voluntarily prevents the occurrence of a condition established for his or her benefit is estopped from seeking relief from a contract on the grounds that the condition precedent to his obligation failed to occur.” Broussard v. Hill, 100 Nev. 325, 330, 682 P.2d 1376, 1379 (1984). In
 
 Goldston,
 
 this court stated:
 

 Where “time was of the essence” — that is, where performance by the plaintiff within a specified time was a condition precedent to the defendant’s duty to perform his part — if the plaintiff has been caused to delay his performance beyond the specified time by the request or agreement or other conduct of the defendant, the plaintiff can enforce the contract in spite of his delay. This assumes that the nonperformance of the condition was not caused by plaintiff’s own inability to perform, and that but for the defendant’s request, agreement, or other conduct, the plaintiff would have performed the condition. If the defendant later repudiates or otherwise breaks the contract, he cannot use the plaintiff’s failure to perform on time as a defense. 2 Corbin, Corbin on Contracts § 310, at 112 (1950).
 

 Goldston,
 
 98 Nev. at 569-70, 655 P.2d at 523.
 

 Here, the contract provides that Rains agreed “to cooperate and assist Buyer in obtaining tentative and final map approvals from the City of Henderson . . . .” NGA insists that it could not submit a parcel map to the City earlier because, after several requests, Rains repeatedly failed to give NGA the dimensions of the parcel he was to retain. Thus, it argues that Rains should not be able to use NGA’s failure to perform as a defense because, but for his own conduct, NGA would have been able to perform.
 

 Rains claims that “[s]hortly after opening escrow, Rains called NGA and explained that the retained land would be bounded by Stephanie to the East, and was to be configured so as to afford maximum frontage on Stephanie, between the Northeast property
 
 *1162
 
 corner and Pantera Street, with 2.5 ‘net’ acres.” Because this description is arguably ambiguous (Rains did not approve NGA’s first attempt at satisfying Rains’ preferences in this regard), there is a genuine issue of fact regarding whether Rains breached the contract and, thus, whether that breach estops him from using NGA’s failure to perform as a defense.
 

 Waiver
 

 NGA also argues that there is a question of fact regarding whether Rains waived his right to assert its breach as a defense because Rains continued to work toward closing the transaction for four months after he believed NGA breached the contract. Rains claims that his silence was intended to give NGA “every opportunity to close escrow.”
 

 “The performance of the condition of an escrow may be waived.” Kosinski v. Gallt, 294 N.Y.S.2d 602, 605 (1968). “The weight of authority overwhelmingly supports the proposition that the breach of a condition of
 
 delivery
 
 of an escrow can be ratified directly or indirectly by the escrow depositor.”
 
 Id.
 
 (emphasis added). This court has recognized this principal and expanded it to allow the conduct of the depositor to ratify the breach of a condition of
 
 closure
 
 of escrow. Holmby, Inc. v. Dino, 98 Nev. 358, 362-63, 647 P.2d 392, 394-95 (1982).
 

 In Carcione v. Clark, 96 Nev. 808, 618 P.2d 346 (1980), the buyer claimed that the seller failed to clear a lis pendens on the property to be sold. This court noted that the buyers were bound by the contract because they “chose to proceed with the purchase despite the failure of this condition which may have discharged them from that duty.”
 
 Id.
 
 at 810, 618 P.2d at 347. Likewise, in
 
 Goldston,
 
 the buyer did not deposit the purchase money into escrow by the deadline. Notwithstanding, both parties continued to try to close the transaction. This court held that escrow was extended in such a situation.
 
 Goldston,
 
 98 Nev. at 568, 655 P.2d at 522.
 

 In
 
 Kosinski,
 
 the seller did not assert a breach of escrow until eight months after the breach took place. During those months, the seller repeatedly indicated that he had “a working agreement with” the buyer. That court held, “between November 14, 1962 and June 17, 1963, when the first written claim was made for the breach of escrow agreement, [seller] abandoned the escrow agreement and waived strict compliance with its terms. He conducted himself as if he had a different arrangement with [the buyer].”
 
 Kosinski,
 
 294 N.Y.S. 2d at 604.
 

 In this case, both parties took steps toward closing the transac
 
 *1163
 
 tion after the ninety-day grace period had expired. NGA continued to work on an acceptable parcel map and Rains signed a map for submission to the City in September of 1995.
 

 Further, Rains cancelled the contract on November 6, 1995, which is about 120 days, or approximately the time allotted under the contract for all four extensions of the closing date. Thus, we conclude that there is an issue of fact regarding whether Rains abandoned the escrow agreement and waived strict compliance with its terms.
 

 The Lis Pendens
 

 NGA claims that the district court erred as a matter of law in expunging the lis pendens recorded against the property. The party seeking to uphold a lis pendens must establish the following:
 

 (a) The action . . . affects the title or possession of the real property described in the notice;
 

 (b) The action was not brought in bad faith or for an improper motive;
 

 (c) He will be able to perform any conditions precedent to the relief sought in the action insofar as it affects the title or possession of the property; and
 

 (d) He would be injured by any transfer of an interest in the property before the action is concluded.
 

 NRS 14.015(2).
 

 Rains claims that because NGA failed to perform within the time period required by the contract, NGA cannot satisfy the conditions precedent to the relief it seeks.
 
 See
 
 NRS 14.015(2)(c).
 

 In light of our opinion today, it seems likely that NGA will be able to perform any conditions precedent to the relief sought.
 

 Under NRS 14.015(3), NGA must also establish to the satisfaction of the court either:
 

 (a) That he is likely to prevail in the action; or
 

 (b) That he has a fair chance of success on the merits in the action and the injury described in paragraph (d) of subsection 2 would be sufficiently serious that the hardship on him in the event of a transfer would be greater than the hardship on the defendant resulting from the notice of pen-dency, and that if he prevails he will be entitled to relief affecting the title or possession of the real property.
 

 Based on the foregoing, we hold that NGA has established that it has a fair chance of success on the merits in the action.
 
 *1164
 
 Additionally, the hardship on NGA is probably greater than on Rains if the
 
 lis pendens
 
 is expunged because NGA has expended time and money on the property and is still willing to perform, while Rains’ sole risk stems from the possible loss of a transaction with another buyer.
 
 [4]
 
 Therefore, we hold that the district court erred in expunging the
 
 lis pendens.
 

 CONCLUSION
 

 Because we conclude that the parties did not intend for the recordation of the map to be a contingency, escrow was due to close on or about July 12, 1995. Thus, under the contract, NGA had a duty to record the map within ninety days or pay an extension fee. Since NGA did neither, Rains has made a prima facie showing that NGA breached the contract and excused Rains’ duty to perform.
 

 Nevertheless, there are genuine issues of material fact regarding whether Rains is estopped from asserting such a breach as a defense as well as whether he waived that right. There are also, however, issues of fact as to whether the parcel map was made satisfactory for recordation within a reasonable time after Rains provided adequate dimensions and thus, whether the failure to post extension fees excused Rains’ performance under the agreement. Additionally, we conclude that the district court erred in expunging the
 
 lis pendens
 
 because NGA has shown that it can perform the condition precedent and that there is a fair chance it will prevail at trial.
 

 We therefore reverse the district court’s order granting summary judgment and remand for proceedings consistent with this opinion.
 

 [1]
 

 On May 19, 1995, Notre Dame assigned all of its rights, title and interest in the contract to NGA. Flaherty remained with NGA and continued to oversee the transaction.
 

 [2]
 

 Rains claims he sent the revised map to NGA on June 2, 1995, and cites Volume 8 of the record for support. However, the record on appeal is comprised of only three volumes. Further, NGA points out that even though the actual map is dated June 2, the stamp on the facsimile transmission reads July 5, 1995.
 

 [3]
 

 NGA mistakenly stated in the letter that “escrow shall close
 
 45
 
 days after the removal of all contingencies.”
 

 [4]
 

 NGA claims that Rains has secured another buyer, R-S Development Co. This court granted NGA’s motion to add R-S Development Co. as an indispensable party and stayed enforcement of the district court’s order pending further order of this court.