WHITE CAP INDUSTRIES, INC., DBA SIERRA SUPPLY, APPELLANT, v. RICHARD RUPPERT, AKA DICK RUPPERT, RESPONDENT.

No. 38034

April 28, 2003

67 P.3d 318

*Avansino Melarkey Knobel McMullen & Mulligan* and *John B. Mulligan,* Reno; *Rutan & Tucker, LLP,* and *Robert Charles Braun* and *Matthew K. Ross,* Costa Mesa, California, for Appellant.

*McDonald Carano Wilson LLP* and *Pat Lundvall* and *Michael A. T. Pagni,* Reno, for Respondent.

Before ROSE, MAUPIN and GIBBONS, JJ.

## OPINION

*Per Curiam:*

In 1974, Richard Ruppert, along with several other individuals, formed a construction supply business named Sierra Supply, Inc., in Sparks, Nevada. Over the years, Ruppert was intimately involved in the company's daily operations. In 1998, he sold the company to White Cap Industries, Inc. The sales agreement contained a non-competition clause and provided that he serve as White Cap's district sales manager. White Cap retained most of Sierra Supply's employees, including Michael Harmon, who stayed on as the local branch manager.

Shortly after the sale, Harmon became dissatisfied with White Cap's management, terminated his employment and formed a competing construction supply business. However, before terminating his employment with White Cap, Harmon allegedly told Ruppert that he was interested in starting his own construction supply business and that he was attempting to obtain financing. Ruppert never disclosed any of this information to White Cap, nor did he take any affirmative actions to assist or dissuade Harmon from starting his own business. Ruppert retired from White Cap in December 1998.

In February 2001, White Cap filed the instant action against Ruppert, alleging that he breached the non-competition agreement and his fiduciary duties to White Cap when he failed to inform White Cap of Harmon's statements about starting his own construction supply business. Ruppert filed a motion for summary judgment, which the district court granted after determining that there was no evidence to support White Cap's claims.

On appeal, White Cap asserts that the district court erred because Ruppert breached his contractual and fiduciary duties to White Cap by failing to inform White Cap of Harmon's statements. When reviewing a district court order granting summary judg-

ment, we exercise de novo review.[1] Summary judgment is appropriate when there is no genuine issue of material fact remaining and the moving party is entitled to judgment as a matter of law.[2] In making this determination, we will view the pleadings and proof offered below in the light most favorable to the non-moving party.[3]

White Cap asserts that Ruppert was obligated by the terms of the non-competition agreement to inform White Cap of Harmon's intentions to start a competing business. The non-competition agreement states, in pertinent part:

> 2. *Non-Competition Commitment.*
>
> (a) *Agreement Not to Compete.* The Seller agrees that, for a period of five (5) years after the date of this Agreement, he shall not, directly or indirectly, in any manner or capacity (e.g., as an advisor, principal, agent, partner, officer, director, stockholder, employee, member of any association or otherwise) engage in the Business within the geographic area described in *Section 2(b)* below.
>
> (b) *Geographic Extent of Covenant.* The obligations of the Seller under *Section 2(a)* shall apply to Nevada and California.
>
> (c) *Indirect Competition.* Seller further agrees that, during the term of this Agreement, he will not, directly or indirectly, assist or encourage any other person in carrying out, directly or indirectly, any activity that would be prohibited by the foregoing provisions of this *Section 2* if such activity were carried out by the Seller, either directly or indirectly. In particular, the Seller agrees that he will not, directly or indirectly, induce any employee of the Buyer . . . to carry out, directly or indirectly, any such activity.

White Cap argues that Ruppert breached section 2(c) of the agreement because his silence assisted and encouraged Harmon in carrying out his plans to compete with White Cap. We disagree. The plain language of the non-competition agreement does not state that Ruppert has an affirmative duty to inform White Cap of the competitive intentions of other employees. Rather, the non-competition agreement reads as a list of prohibitions directing Ruppert not to ''engage'' in competition with White Cap or ''assist,'' ''encourage'' or ''induce'' others to compete with White Cap. Nothing

---

[1]*Bulbman, Inc. v. Nevada Bell,* 108 Nev. 105, 110, 825 P.2d 588, 591 (1992).

[2]*Serrett v. Kimber,* 110 Nev. 486, 488, 874 P.2d 747, 749 (1994); NRCP 56(c).

[3]*Bulbman,* 108 Nev. at 110, 825 P.2d at 591.

in the agreement suggests that mere non-action would result in a breach. Accordingly, the district court properly concluded that the non-competition agreement did not require Ruppert to inform White Cap of Harmon's competitive intentions.

Additionally, we conclude that Ruppert breached no fiduciary duty to White Cap. While section 381 of the *Restatement (Second) of Agency* provides that "an agent is subject to a duty to use reasonable efforts to give his principal information which is relevant to affairs entrusted to him,"[4] Harmon's statements regarding his desire to start his own business were not relevant to the duties entrusted to Ruppert, who did not oversee Harmon. Moreover, the *Restatement* provides that an employee is permitted to make preparations to compete with his or her employer.[5] Accordingly, since an employee does not breach his duty of loyalty by making preparations to compete, a fellow employee does not breach his duty of loyalty by failing to disclose his knowledge of this fact.

Based on the above, we conclude that the district court did not err when it granted summary judgment in favor of Ruppert. Accordingly, we affirm the judgment of the district court.

[4]*Restatement (Second) of Agency* § 381 (1958).

[5]*See id.* § 393 cmt. e.