SHEEHAN & SHEEHAN, a Nevada Professional Corpora-
tion, Appellant, *v.* NELSON MALLEY AND COMPANY,
a Nevada Professional Corporation, dba NELSON MAL-
LEY & THORNE, Respondent.

No. 42957

SHEEHAN & SHEEHAN, a Nevada Professional Corpora-
tion, Appellant, *v.* NELSON MALLEY AND COMPANY,
a Nevada Professional Corporation, dba NELSON MAL-
LEY & THORNE, Respondent.

No. 43401

August 11, 2005                                    117 P.3d 219

*Steven B. Glade,* Las Vegas, for Appellant.

*Edward J. Hanigan,* Henderson, for Respondent.

482

Before ROSE, GIBBONS and HARDESTY, JJ.

## OPINION

By the Court, GIBBONS, J.:

In these consolidated appeals, we primarily consider whether the district court properly construed a contractual covenant not to compete and a corresponding liquidated damages clause. We conclude that the district court erred as a matter of law in awarding liquidated damages, and we therefore reverse that part of the judgment. We affirm the remainder of the judgment and the order awarding attorney fees and costs.

### *FACTS*

William and Thomas Sheehan are brothers who operated an accounting firm, appellant Sheehan & Sheehan, a Nevada Professional Corporation, in Henderson from 1981 to 1997. In 1996, the Sheehans decided to sell their practice because William would be 65 years old and Thomas 66 years old at the end of the 1997 tax season. Dennis Nelson and Patrick Thorne are officers of respondent Nelson Malley and Company, a Nevada Professional Corporation, d/b/a Nelson Thorne, which expressed an interest in purchasing the Sheehan & Sheehan practice. As part of the negotiations, the Sheehans provided access to all their tax returns, work product, and financial statements. Patrick Thorne performed due diligence, spoke with the Sheehans, and reviewed various documents. William Sheehan testified that Thorne's due diligence investigation took 50 to 100 hours.

Following the due diligence review, the parties agreed to a sales price of $375,000 with a $55,000 price reduction if Nelson Thorne collected less than $325,000 for services rendered in the first fourteen months following its purchase of the practice. The parties referred to the fourteen-month period following the sale as the ''look

back'' period. William Sheehan testified that he was afraid that Nelson Thorne would misrepresent the amount collected in order to take advantage of the price reduction. Before the agreement was finalized, during a meeting with Dennis Nelson and Patrick Thorne, William Sheehan stated that he wanted to see monthly figures for Nelson Thorne's collections during the look-back period. When Nelson refused, Sheehan informed him that he would not sell the practice unless Nelson Thorne provided the figures as he requested. Nelson started to leave, but Thorne told him to stay because he was willing to provide those figures to Sheehan.

As a result of that conversation, the sales agreement required Nelson Thorne to provide a calculation of monthly billing. The agreement also included a covenant not to compete that prohibited the Sheehans from practicing or holding themselves out as accountants within a 50-mile radius of the Clark County Courthouse. A liquidated damages clause provided for a 75 percent reduction in the sales price outstanding if either of the Sheehans violated the covenant not to compete. The sales agreement further included an indemnification clause that provided that Nelson Thorne would be held harmless for costs arising from Sheehan & Sheehan's performance or failure to perform any act, activity, or service.

William Sheehan testified that the monthly figures were important to him because he wanted to know, from one month to another, whether Nelson Thorne was timely billing customers or completing an appropriate amount of business. Accordingly, once Nelson Thorne took over the Sheehan & Sheehan practice, Sheehan requested monthly reports at least once a week. Nelson Thorne never provided month-to-month reports to the Sheehans.

On October 1, 1998, Nelson Thorne provided the Sheehans with a document that accounted for services rendered and bills collected during the look-back period. The accounting, which included adjustments giving Sheehan & Sheehan credit for uncollected accounts receivable, totaled $308,411.32. The Sheehans requested an opportunity to review Nelson Thorne's records. Following that review, the Sheehans claimed that Nelson Thorne made accounting errors which, when corrected, indicated that it had collected $327,881.82.

On January 23, 1999, Sheehan & Sheehan filed a complaint seeking declaratory relief on the issue of Nelson Thorne's collections during the look-back period. Nelson Thorne answered and counterclaimed for specific performance and indemnification. The district court ordered Nelson Thorne to continue making payments on the promissory note during the litigation.

After a four-day bench trial, the district court found for Nelson Thorne and ordered that the original sales price be reduced to

$320,000. The court further found that the evidence at trial proved that William Sheehan had performed accounting work in violation of the covenant not to compete. Thus, the court reduced the sales price by an additional $155,955.63 pursuant to the liquidated damages clause. As a result, the court found that Nelson Thorne had overpaid on the sales price and ordered Sheehan & Sheehan to repay $139,272.26 to Nelson Thorne. The district court further found that Nelson Thorne had suffered $35,000 in damages as a result of errors in Sheehan & Sheehan's work product and ordered indemnification in that amount. After a separate hearing, the district court awarded Nelson Thorne $50,000 in attorney fees and $8,991.41 in costs. Sheehan & Sheehan timely appealed both orders. We consolidated the appeals for review.

## DISCUSSION

### Standard of review

We have repeatedly held that "findings of fact and conclusions of law, supported by substantial evidence, will not be set aside unless clearly erroneous."[1] However, we have also recognized that the "[c]onstruction of a contractual term is a question of law and this court 'is obligated to make its own independent determination on this issue, and should not defer to the district court's determination.' "[2] Thus, the district court's determination that the contract was or was not breached will be affirmed unless clearly erroneous, but the district court's interpretation of the meaning of contractual terms is subject to independent appellate review.

### Specific performance

Section II, paragraph 3 of the sales agreement provides, in pertinent part:

> In the event the Buyer collects, during the fourteen (14) month period immediately following the Effective Date [the "look back" period], for services performed during the year ending on the first anniversary of the Effective Date, for Acquired Clients, an amount that is less than $325,000, then Seller shall adjust the Purchase Price [from $375,000 to $320,000].

---

[1]*Edwards Indus. v. DTE/BTE, Inc.*, 112 Nev. 1025, 1031, 923 P.2d 569, 573 (1996).

[2]*NGA #2 Ltd. Liab. Co. v. Rains*, 113 Nev. 1151, 1158, 946 P.2d 163, 167 (1997) (quoting *Clark Co. Public Employees v. Pearson*, 106 Nev. 587, 590, 798 P.2d 136, 137 (1990)).

At trial, Sheehan & Sheehan argued that Nelson Thorne collected in excess of $325,000. To support that argument, Thomas Sheehan testified that the district court should include in its calculation the billings, accounts receivable, adjustments, and work in progress accumulated during the look-back period. During cross-examination, Thomas Sheehan conceded that he could not prove that Nelson Thorne exceeded the $325,000 breakpoint without including all the above factors. On the other hand, both Patrick Thorne and Dennis Nelson testified that work in progress was not included in the breakpoint calculation because work in progress is not a "collection."

The district court found that for the purposes of the agreement, "collections" included billings during the look-back period and accounts receivable as of June 30, 1998. The court further found that under that formula, Nelson Thorne collected less than $325,000. Thus, the court concluded that Nelson Thorne was entitled to a $55,000 reduction in the sales price. The district court noted that its decision was based on its determination that Nelson Thorne's testimony was more credible. The role of determining witness credibility belongs to the district court, and we will not direct that certain witnesses should or should not be believed.[3] Thus, we conclude that substantial evidence supports the district court's determination that Nelson Thorne was entitled to specific performance.

*Monthly billing reports*

Section II, paragraph 5 of the sales agreement provides, in pertinent part:

> [Nelson Thorne] shall furnish to [Sheehan & Sheehan] monthly totals of billings and collections to/from Acquired Clients commencing with the period ending July 31, 1997. [The Sheehans] shall have right [sic] to contact clients for collection during July and August, 1998, of balances outstanding on June 30, 1998 if credit is not given for such balances in computation of adjustment, if any.

As mentioned above, contract interpretation is subject to independent appellate review.[4] As a general rule, we construe unam-

[3]*Douglas Spencer v. Las Vegas Sun,* 84 Nev. 279, 282, 439 P.2d 473, 475 (1968).

[4]*NGA #2,* 113 Nev. at 1158, 946 P.2d at 167.

biguous contracts and contractual covenants not to compete according to their plain language.[5] We have explained, however, that "[i]n interpreting a contract, 'the court shall effectuate the intent of the parties, which may be determined in light of the surrounding circumstances if not clear from the contract itself.' "[6] The district court concluded that Nelson Thorne did not breach the agreement by failing to prepare monthly billing reports for Sheehan & Sheehan. The court agreed with Nelson Thorne that a single report that conveyed monthly billing information for the look-back period satisfied the agreement.

We conclude that the district court's interpretation of paragraph 5 is correct. The plain language of the sales agreement calls for Nelson Thorne to provide monthly billing totals for each month commencing in July 1997. The clause calls for a report of monthly *totals* rather than a monthly *report* of totals. Accordingly, the district court correctly held that a single report of billing totals satisfied the plain meaning of the sales agreement.

Furthermore, even if Nelson Thorne's failure to provide monthly reports constituted a breach of the agreement, the breach was immaterial. The clause authorized Sheehan & Sheehan to review Nelson Thorne's billing practices and contact Nelson Thorne's clients for unpaid debts. However, Sheehan & Sheehan was not authorized to contact clients until July 1998. Thus, even if Nelson Thorne had provided reports on a month-to-month basis, the reports would presumably have meant little to Sheehan & Sheehan because it could not have contacted clients until that time. William and Thomas Sheehan both testified that the monthly reports were important to them because they wanted to ensure that Nelson Thorne was operating the practice efficiently. This, they said, was important since there was a $55,000 price reduction on the line.

However, Nelson Thorne gave Sheehan & Sheehan credit for all accounts receivable due as of June 30, 1998. Even with that credit, Sheehan & Sheehan did not prove that Nelson Thorne collected $325,000 during the look-back period. Since the plain language of the sales agreement indicates that the parties agreed to a report of monthly *totals* rather than a monthly *report* of totals, we affirm the district court's judgment.

[5]*White Cap Indus., Inc. v. Ruppert,* 119 Nev. 126, 128, 67 P.3d 318, 319 (2003); *Sandy Valley Assocs. v. Sky Ranch Estates,* 117 Nev. 948, 953-54, 35 P.3d 964, 967 (2001); *Kaldi v. Farmers Ins. Exch.,* 117 Nev. 273, 278, 21 P.3d 16, 20 (2001).

[6]*NGA #2,* 113 Nev. at 1158, 946 P.2d at 167 (quoting *Davis v. Nevada National Bank,* 103 Nev. 220, 223, 737 P.2d 503, 505 (1987)).

*Covenant not to compete*

Section VI of the sales agreement provides, in relevant part:

> [The Sheehans] hereby agree not to hold themselves out as accountants, including as certified public accountants engaged in the practice of accounting . . . for a period of three years from the date of the execution of this agreement, in an area defined by a radius of fifty miles from the Clark County Court House located at 200 South Third Street, Las Vegas, Nevada.
>
> Furthermore, Sheehans agree not to compete with [Nelson Thorne] in the performance of any service, . . . and agree not to perform any act intended to promote themselves or others as providers of such services . . . .
>
> In the event Sheehans violate the foregoing, then [Nelson Thorne] may, as liquidated damages and not as a penalty, immediately reduce the Purchase Price by seventy-five percent (75%) of any amount of the Purchase Price then remaining unpaid, or $125,000, whichever is greater.

The district court found that the Sheehans breached the covenant not to compete ''sometime between August and October 1998.'' We conclude that the district court's determination was erroneous as a matter of law.

We construe covenants not to compete according to their plain language, and such covenants are enforceable only if they are reasonable under the circumstances.[7] Further, we strictly construe the language of covenants not to compete; and in the case of an ambiguity, that language is construed against the drafter.[8] According to the covenant's plain meaning, Nelson Thorne was entitled only to a reduction in the outstanding sales price if the Sheehans held themselves out as accountants within 50 miles of the Clark County Courthouse.

At trial, Patrick Thorne testified that he discovered that William Sheehan had violated the covenant not to compete while Thorne was preparing a tax return for a client, the Boulder City Building Trust. Thorne discovered documents indicating that William Shee-

---

[7]*White Cap Indus.,* 119 Nev. at 128, 67 P.3d at 319; *Sandy Valley Assocs.,* 117 Nev. at 953-54, 35 P.3d at 967; *Kaldi,* 117 Nev. at 278, 21 P.3d at 20; *Jones v. Deeter,* 112 Nev. 291, 296, 913 P.2d 1272, 1275 (1996).

[8]*Traffic Control Servs. v. United Rentals,* 120 Nev. 168, 172, 174, 87 P.3d 1054, 1057, 1058 (2004).

han had been performing accounting work for the Trust. Though the covenant not to compete provided exceptions for some trustee work, that exception did not include accounting work. However, Nelson Thorne concedes that William Sheehan earned a total fee of $300 for this service. Even if Sheehan's work for the Boulder City Building Trust technically violated the covenant not to compete, the breach was immaterial and insufficient to trigger the liquidated damages clause.[9]

Furthermore, Dennis Nelson testified that William Sheehan violated the covenant not to compete by performing accounting services related to litigation for a client named Dennis Bayard. Bayard was a shareholder in two corporations: Advanced Steel Systems, Inc., in Las Vegas and Tucson Steel in Tucson, Arizona. Bayard initially approached Nelson Thorne to investigate Tucson Steel because he did not believe that Tucson Steel was keeping its books correctly. However, Bayard ceased conversations with Nelson Thorne and retained William Sheehan to work on the Tucson Steel matter.

Nelson Thorne argues that the district court correctly determined that Sheehan's work for Tucson Steel breached the covenant not to compete. We disagree. Tucson, Arizona, is located more than 50 miles from the Clark County Courthouse. Thus, substantial evidence does not support the district court's finding that Sheehan's performance of accounting work in Tucson violated the covenant's geographic restriction.

Moreover, Tucson Steel is a corporation and a separate legal entity from Bayard. The fact that Bayard contacted and hired Sheehan within the geographic limit does not alter the fact that Sheehan performed the work for Tucson Steel in Tucson, Arizona. The plain language of the clause prevents the Sheehans from performing accounting work within the geographic limit. It does not prohibit the Sheehans from being contacted within the geographic limit to perform work elsewhere.

Absent express and unequivocal language in the covenant, it is unwise public policy to hold that a covenant not to compete prevents a party from performing work for an independent entity located outside the geographic limitation simply because a shareholder of that independent entity resides and conducts business within the geographic limitation. Such an interpretation would effectively prevent the Sheehans from working for a company that ei-

---

[9]*See, e.g., Young Electric Sign Co. v. Fohrman,* 86 Nev. 185, 188, 466 P.2d 846, 847 (1970) (noting that a party is entitled to recover total damages upon the other party's material breach of the underlying contract).

ther maintains an office or has shareholders who live in Las Vegas. This interpretation goes beyond any reasonable need underlying the covenant not to compete.

The plain meaning of the covenant not to compete prohibits the Sheehans from holding themselves out as accountants within 50 miles of the Clark County Courthouse. We conclude that, as a matter of law, the Sheehans did not violate this covenant. Thus, the district court erred in finding that the covenant was breached.[10]

*Indemnification*

> [Sheehan & Sheehan] indemnifies and holds [Nelson Thorne] harmless from . . . costs, damages or expense, including but not limited to attorney's fees, that arise directly or indirectly from this Agreement or the performance or nonperformance of any act, activity, or service . . . relating to any and all matters connected with the Practice or this Agreement, whether occurring before or after the date of execution of this Agreement. [Sheehan & Sheehan's] acceptance of this Agreement constitutes [Sheehan & Sheehan's] unqualified acceptance of this indemnification.

The district court concluded that Nelson Thorne was entitled to recoup its remedial costs under this provision. We conclude that the district court's interpretation is correct.

The plain language of the indemnification clause provides that Sheehan & Sheehan will compensate Nelson Thorne for losses or damage sustained as a result of Sheehan & Sheehan's act, action, service, or failure to perform an act, action, or service. Nelson Thorne presented testimony at trial indicating that it spent a significant amount of time and incurred $35,000 in damages as a result of having to correct tax returns that were erroneously prepared by Sheehan & Sheehan. Nelson Thorne also presented documentary evidence demonstrating the extent of the mistakes made by Sheehan & Sheehan. The indemnification clause applies since the preparation of tax returns was related to the accounting practice that Nelson Thorne purchased from Sheehan & Sheehan. Accordingly, we affirm the district court's order requiring Sheehan & Sheehan to compensate Nelson Thorne for its damages.

Section IX of the sales agreement provides:

---

[10]Sheehan & Sheehan also argues that the liquidated damages clause constituted an unenforceable penalty. Since we conclude that Nelson Thorne is not entitled to recover liquidated damages, we do not reach that issue.

*Mitigation of damages*

We have previously recognized that "[a]s a general rule, a party cannot recover damages for loss that he could have avoided by reasonable efforts."[11] In explaining this rule, we have noted that "the burden is upon the party whose wrongful act caused the damages complained of to prove . . . that the damages might have been lessened by reasonable diligence on the part of the aggrieved party."[12] Sheehan & Sheehan argues that Nelson Thorne could have mitigated its damages by asking the Sheehans to correct the work free of charge which, allegedly, the Sheehans were willing to do. This argument is without merit.

Nelson Thorne was only required to make *reasonable* mitigation attempts.[13] Under the circumstances, the duty to reasonably mitigate damages did not obligate Nelson Thorne to ask the Sheehans to correct their own errors. Furthermore, Sheehan & Sheehan failed to produce any evidence that Nelson Thorne could have mitigated its damages by sending the mistakes to a third-party accountant rather than correct the errors themselves. Since Sheehan & Sheehan failed to meet its burden with regard to the mitigation of damages, the district court did not err in this regard.

*Admission of testimony*

On prior occasions, we have explained that "[t]he trial court is vested with broad discretion in determining the admissibility of evidence. The exercise of such discretion will not be interfered with on appeal in the absence of a showing of palpable abuse."[14] Sheehan & Sheehan objected to testimony on the extent of Nelson Thorne's damages because its interrogatories requested that information and Nelson Thorne failed to provide it. Thus, Sheehan & Sheehan argued that admission of the evidence would result in trial by ambush.

The district court overruled the objection and admitted the testimony after Sheehan & Sheehan's counsel acknowledged that the document upon which the testimony was based had been received during the course of discovery, and Sheehan & Sheehan failed to file a motion to compel after Nelson Thorne failed to provide the document after the initial interrogatory. Under these circumstances,

---

[11]*Conner v. Southern Nevada Paving,* 103 Nev. 353, 355, 741 P.2d 800, 801 (1987).

[12]*Cobb v. Osman,* 83 Nev. 415, 422, 433 P.2d 259, 263 (1967).

[13]*Conner,* 103 Nev. at 355, 741 P.2d at 801.

[14]*State ex rel. Dep't Hwys. v. Nev. Aggregates,* 92 Nev. 370, 376, 551 P.2d 1095, 1098 (1976) (citations omitted).

it was not palpable error for the district court to allow the witness to testify as to the extent of Nelson Thorne's damages.

*Costs*

"The determination of allowable costs is within the sound discretion of the trial court."[15] Only reasonable costs may be awarded.[16] " '[R]easonable costs' must be actual and reasonable, 'rather than a reasonable estimate or calculation of such costs.' "[17] The prevailing party must serve a memorandum of costs within five days of the entry of judgment in the underlying case.[18] The adverse party may contest those costs by filing a motion to "retax and settle the costs" within three days of being served with the prevailing party's memorandum of costs.[19] Although Nelson Thorne served Sheehan & Sheehan with a copy of its memorandum of costs, Sheehan & Sheehan did not move the district court to retax and settle costs. Accordingly, Sheehan & Sheehan waived appellate review of this issue.[20]

## CONCLUSION

Substantial evidence supports the district court's finding that Nelson Thorne was entitled to specific performance, indemnification, and costs. However, the district court erred in determining that Nelson Thorne was entitled to liquidated damages; Sheehan & Sheehan did not, as a matter of law, violate the covenant not to compete. Accordingly, we affirm in part and reverse in part the district court's judgment and remand for the district court to recalculate damages consistent with this opinion. We affirm the order awarding attorney fees and costs.[21]

HARDESTY, J., concurs.

ROSE, J., concurring:

The requirement that Nelson Thorne furnish "monthly totals of billing and collections" commencing with the period ending

---

[15]*Bobby Berosini, Ltd. v. PETA,* 114 Nev. 1348, 1352, 971 P.2d 383, 385 (1998).

[16]NRS 18.005.

[17]*Bobby Berosini,* 114 Nev. at 1352, 971 P.2d at 385-86 (quoting *Gibellini v. Klindt,* 110 Nev. 1201, 1206, 885 P.2d 540, 543 (1994)).

[18]NRS 18.110(1).

[19]NRS 18.110(4).

[20]*See Gallego v. State,* 117 Nev. 348, 365, 23 P.3d 227, 239 (2001).

[21]We have considered Sheehan & Sheehan's remaining arguments on appeal and conclude that they are without merit.

July 31, 1997, means to me that the information should have been provided each month. Nelson Thorne's providing the monthly billings and collections at the end of the look-back period does not comply with the agreement because it requires that the reporting of the monthly totals commence with the period ending July 31, 1997, the beginning of the look-back period. However, I agree with the majority that this breach was of no consequence because there is nothing the Sheehans could have done even if provided with the monthly billing and collection totals each month. Therefore, I concur with the majority's conclusion concerning this issue, and I am in agreement with the rest of the majority opinion.