NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 24 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MARTIN S. ROOD,<br><br>           Plaintiff-Appellant,<br><br>  v.<br><br>LIBERTY INSURANCE<br>UNDERWRITERS, INC., DBA Liberty<br>Mutual Group,<br><br>           Defendant-Appellee. | No.    19-15920<br><br>D.C. No.<br>2:16-cv-02586-JAD-NJK<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Nevada
Jennifer A. Dorsey, District Judge, Presiding

Submitted July 6, 2020[**]
Portland, Oregon

Before:  BENNETT and MILLER, Circuit Judges, and PEARSON,[***] District
Judge.

        Martin S. Rood ("Rood") appeals a district court judgment granting Liberty

_____

        [*]        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

        [**]        The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

        [***]        The Honorable Benita Y. Pearson, United States District Judge for the
Northern District of Ohio, sitting by designation.

Insurance Underwriters, Inc., dba Liberty Mutual Group's ("Liberty") motion for summary judgment and denying Rood's motion for summary judgment in a diversity insurance coverage action.

We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Liberty issued a professional liability insurance policy to Jack Paul Gillespie ("Gillespie"), effective from November 2, 2010 to November 2, 2011 ("Liberty's 2010-2011 policy"). At the heart of this appeal is the meaning, scope, and application of Exclusion N in Liberty's policies.

Interpreting an insurance contract is a question of law in Nevada. *Fed. Ins. Co. v. Coast Converters*, 339 P.3d 1281, 1284 (Nev. 2014). Insurance contracts "should be interpreted broadly, affording the greatest possible coverage to the insured." *Farmers Ins. Grp. v. Stonik ex rel. Stonik*, 867 P.2d 389, 391 (Nev. 1994). Clauses in an insurance contract excluding coverage are to be interpreted narrowly against the insurer. *Nat'l Union Fire Ins. Co. of the State of Pa., Inc. v. Reno's Exec. Air, Inc.*, 682 P.2d 1380, 1383 (Nev. 1984). An exclusionary provision must meet three requirements to be legally effective and the basis of a denial of coverage. The insurer must: "(1) draft the exclusion in 'obvious and unambiguous language,' (2) demonstrate that the interpretation excluding coverage is the only reasonable interpretation of the exclusionary provision, and (3) establish that the exclusion plainly applies to the particular case before the court." *Century*

2

*Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 616 (Nev. 2014) (quoting *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 674 (Nev. 2011)).

1.	The plain language of Exclusion N applies to Gillespie's appraisal of Cielo Vista, LLC's vacant land site located in Las Vegas, Nevada because the site's intended use was "for multiple unit single family housing developments, condominium developments, co-operative housing developments or apartment developments consisting of 10 units or more." Therefore, there was not a triable issue whether Liberty had an obligation to indemnify Gillespie against Rood's claim for negligence and professional malpractice in the underlying lawsuit.

2.	There also was not a triable issue whether Exclusion N applied to appraisals done by appraisers approved to appraise commercial property. Liberty's 2011-2012 policy by its express and plain terms does not cover Rood's claim in the underlying lawsuit. There is no evidence in the record that a change to a subsequent policy automatically resets all of the past policies "like falling dominoes." It simply evidences the parties' intent to adapt to past claims and insure for future ones. Moreover, Gillespie did not testify, and Rood never inquired of Liberty about the changes made to Exclusion N. These policies are "claims made and reported" policies that have a one-year term. It is undisputed that the claim was made during the policy period of Liberty's 2010-2011 policy. A retroactive application of a changed exclusion by judicial fiat does violence to

3

basic contract interpretation, the purpose of which is "to determine the parties' intent when they entered into the contract." *Century Sur. Co.*, 329 P.3d at 616 (citing *Sheehan & Sheehan v. Nelson Malley & Co.*, 117 P.3d 219, 224 (Nev. 2005)). Such remediation in Liberty's 2011-2012 policy does not relate back to create coverage for a claim made in 2010.

3. Exclusion N was not ambiguous. "Any ambiguity in an insurance contract must be interpreted against the drafting party and in favor of the insured." *Stonik*, 867 P.2d at 391. "Whether an insurance policy is ambiguous turns on whether it creates reasonable expectations of coverage as drafted." *Fed. Ins. Co.*, 339 P.3d at 1285 (brackets and citation omitted).

Exclusion N lists examples of single-family housing developments. It is written in the disjunctive to indicate that however the units are labeled (condominium, apartment, etc.), Exclusion N applies if there are "10 units or more." Rood's argument that the court should find that Exclusion N is ambiguous is not persuasive because, as the district court concluded, by appraising vacant land intended to be the site of a mixed-use high rise with over 400 units, Gillespie had no "reasonable expectation" of professional liability coverage under Liberty's 2010-2011 policy.

4. We also reject Rood's argument that Exclusion N did not apply because Gillespie was retained to do an "as-is" valuation of the property, and not

4

an appraisal for any proposed use. Gillespie's appraisal was not based on the "as-is" value of the land. Rather, it depended on the vacant land's capacity for becoming a high rise. Several parts of Gillespie's report contradict Rood's contention that Gillespie appraised the land "as is"—i.e., the value of "the land alone" that was not contingent on any future development. The report demonstrates that Gillespie's valuation was based on the ability and plan to develop the land into a mixed-use high rise. For Exclusion N to apply, the land must be "undeveloped or vacant," and have a proposed use, among other things, for "multiple unit single family housing developments." As the district court found, the facts fit squarely within Exclusion N.

5. Exclusion N was legally effective because it clearly communicated coverage limitations to Gillespie. Any exclusion must be narrowly tailored so that it "clearly and distinctly communicates to the insured the nature of the limitation, and specifically delineates what is and is not covered." *Griffin v. Old Republic Ins. Co.*, 133 P.3d 251, 255 (Nev. 2006) (internal quotation marks and footnotes omitted). An exclusion provision bars coverage when (1) the insurer has written it "in obvious and unambiguous language in the policy," (2) "the interpretation excluding covering under the exclusion is the only interpretation of the exclusion that could fairly be made," and (3) the exclusion "clearly applies" to the particular case before the court. *Powell*, 252 P.3d at 674. Exclusion N in Liberty's 2010-

5

2011 policy is in obvious and unambiguous language that plainly states the policy does not apply to a development project on property entitled for a 37-story building with 414 residential units and 32,970 square feet of commercial space. This interpretation appears to be the only fair interpretation of Exclusion N.

We hold Exclusion N: (1) is obvious and unambiguous; (2) is susceptible to only one reasonable interpretation; and, (3) plainly applies to exclude coverage in the underlying lawsuit. Because Exclusion N is enough to determine whether the policy applied to the underlying lawsuit, like the district court, we decline to address whether Exclusion L in Liberty's 2010-2011 policy would also preclude coverage because it is unnecessary.

6. Finally, Rood has failed to preserve certain issues on appeal by not raising them before the district court, including the relevance of a subsequent 2011-2012 insurance policy on coverage of the claim, whether changes to that policy evidence the parties' intent to provide coverage for the prior policy, the effect of the commercial appraisal endorsement, and whether language in the insured's renewal application affects the applicability of Exclusion N. Having failed to present these arguments to the district court, Rood cannot raise them for the first time here. *See Bowers v. Whitman*, 671 F.3d 905, 917 n.7 (9th Cir. 2012) ("[g]enerally, we will not consider an issue raised for the first time on appeal"). Although there are exceptions to this rule, *see Greger v. Barnhart*, 464 F.3d 968,

6

973 (9th Cir. 2006),[1] this case does not fall within any of them.

**AFFIRMED.**

---

[1] We recognize three exceptions to the general rule that the court will not consider an issue raised for the first time on appeal: "in the 'exceptional' case in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process, when a new issue arises while appeal is pending because of a change in the law, or when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *Bolker v. Comm'r*, 760 F.2d 1039, 1042 (9th Cir. 1985) (citations omitted).