*1040
 
 OPINION
 

 Per Curiam:
 

 FACTS
 

 On August 25, 1990, seventeen-year-old Jeremy Donaldson (“Jeremy”), seventeen-year-old Robert Anderson (“Anderson”), and fifteen-year-old David Cragun left Salt Lake City on an all-night drive to San Francisco. Fearing that they would not be permitted to travel such a long distance alone, the boys told their parents they were going camping in Moab, Utah. They left Salt Lake City at approximately 10:30 p.m. in Anderson’s “king cab” Nissan pickup truck. In the early morning hours of August 26, 1990, Anderson lost control of his vehicle on the highway outside Lovelock, Nevada. The truck rolled several times, throwing Jeremy from the cab and killing him almost immediately.
 

 Appellants Wayne and Marilynne Donaldson (“Donaldsons”), filed a wrongful death action against respondent Anderson, for the death of their son Jeremy. The Donaldsons claimed that Anderson fell asleep at the wheel and caused the fatal accident.
 

 The case was tried before a jury in a Washoe County District Court. At trial, the following witnesses described the pain and anguish experienced by the Donaldsons as a result of Jeremy’s death: (1) Marilynne Donaldson (mother of decedent); (2) Wayne Donaldson (father); (3) Angela Donaldson (sister); (4) Michelle Donaldson (sister); (5) Harvey Colby (decedent’s 4th and 5th grade teacher); and (6) Lynn Potts (6th grade teacher). Testimony from these witnesses established that Jeremy was a good student in adolescence, an active member of his church, a great lover of nature, an Eagle Scout, and an otherwise compassionate and loving son. In addition, the Donaldson witnesses each testified to
 
 *1041
 
 the devastating impact that Jeremy’s death had upon the family and the individual parents.
 

 On cross-examination it appeared that Jeremy’s grades slipped during his last few years of high school. It was also established that Jeremy’s father had suifered unrelated bouts of depression before the accident, attributable to business failings. Yet aside from cross-examination responses, Anderson presented no evidence refuting that Jeremy was a loving son whose death devastated his parents.
 

 At the close of trial, the jury returned a verdict in favor of the Donaldsons, distributing fifty percent of the fault for the accident to Anderson and fifty percent to Jeremy. The jury assessed the Donaldsons’ damages at $6,395.96. This amount represented the loss to Jeremy’s estate, equalling funeral expenditures. After the fifty percent comparative fault reduction, the Donaldsons were left with a $3,197.98 recovery. The jury specifically determined that the Donaldsons were entitled to zero damages for their grief, sorrow, and loss of consortium.
 

 The Donaldsons filed a post-judgment motion for additur, requesting an increase in the jury award from zero to $800,000 ($400,000 per parent). Alternatively, they sought a new trial on the damages issue alone. The district court denied the motion, proclaiming that it did not want to invade the factfinding province of the jury.
 

 On appeal, the Donaldsons claim that the district court abused its discretion, arguing that an award of zero damages for their grief and suffering is shocking and clearly inadequate. We agree and reverse.
 

 DISCUSSION
 

 The trial court is afforded great discretion in deciding motions for additur. Such a decision will remain undisturbed absent an abuse of that discretion. Harris v. Zee, 87 Nev. 309, 486 P.2d 490 (1971) (abuse of discretion standard of review in remittitur).
 

 Yet in spite of this discretion, we have granted additur on appeal. For example, in Drummond v. Mid-West Growers, 91 Nev. 698, 542 P.2d 198 (1975), this court recognized additur as a viable form of post-judgment relief where a jury award was “clearly inadequate” and a new trial on damages was warranted. In
 
 Drummond,
 
 a jury award of $9,640.35 was clearly inadequate because it did not compensate the plaintiff for pain, suffering, and future disability associated with the loss of his arm.
 
 Id.
 
 at 712-13, 542 P.2d at 208. The evidence established that plaintiff had approximately $4,000 of past medical expenses and $4,000 of estimated future medical expenses.
 
 Id.
 

 
 *1042
 
 Although
 
 Drummond
 
 articulates two threshold determinants before additur is available (clearly inadequate and ripe for new trial), in practical application there is only one primary consideration. In essence, if damages are clearly inadequate or “shocking” to the court’s conscience, additur is a proper form of appellate relief.
 
 See, e.g.,
 
 Arnold v. Mt. Wheeler Power, 101 Nev. 612, 614, 707 P.2d 1137, 1139 (1985) (granting additur on appeal where damages did not include pain and suffering or loss of earnings attributable to loss of limb);
 
 see also
 
 Truckee-Carson Irr. Dist. v. Barber, 80 Nev. 263, 268, 392 P.2d 46, 48 (1964); Shere v. Davis, 95 Nev. 491, 596 P.2d 499 (1979) (where damages are clearly inadequate, new trial is warranted under NRCP 59(a)(5) because jury failed to follow court instructions). Moreover, when damages are so qualified, denial of additur is an abuse of the district court’s discretion and merits reversal.
 

 After examining the prior cases, it is apparent that such decisions rest upon facts where the movant suffered personal physical injury — loss of limbs in particular. There are no reported Nevada decisions examining additur in the context of wrongful death causes of action and associated damages.
 

 Anderson tries to capitalize upon this fact, arguing that loss of a limb and granting additur simply does not translate into granting additur for loss of consortium. Anderson characterizes pain, suffering, and future complications accompanying the loss of an appendage as tangible and measurable with some certainty, whereas loss of consortium is not. This is a distinction without substance.
 

 We conclude that the fundamental additur rubric in
 
 Drummond
 
 applies to wrongful death and loss of consortium. Pain and suffering attributable to the loss of a child is similar to damages for loss of an appendage. This position is consistent with several jurisdictions outside Nevada that have granted or upheld additur on appeal in the wrongful death context.
 
 See e.g.,
 
 Carter v. Chicago & Illinois Midland Ry., 522 N.E.2d 856 (Ill.Ct.App. 1988),
 
 appeal denied,
 
 530 N.E.2d 240 (Ill. 1988); Putter v. Bowman, 641 P.2d411 (Kan.Ct.App. 1982); Toole v. Toole, 195 S.E.2d 389 (S.C. 1973); Steele v. Miami Transit Co., 34 So.2d 530 (Fla. 1948); Ferguson v. Orr, 427 N.W.2d 732 (Minn.Ct.App. 1988).
 

 Applying fundamental additur considerations to the facts of the instant case, we conclude that zero damages for lost consortium resulting from Jeremy’s death is shocking and clearly inadequate.
 
 *1043
 
 It is a rare life that is monetarily worthless and does not trigger some type of measurable sorrow in a surviving parent. The evidence presented at trial leaves no doubt that Jeremy’s life was not such a rarity.
 

 There is an abundance of uncontroverted evidence establishing that Jeremy was an intelligent, supportive, humorous, and outgoing son to the Donaldsons. In addition, there is uncontroverted evidence that his death triggered great grief and suffering in both parents. Contrary to Anderson’s contentions on appeal, nothing in the record justifies the award of zero damages.
 

 Therefore, we conclude that the district court abused its discretion by rejecting the Donaldsons’ motion for additur and alternative motion for a new trial. We reverse the district court’s order and remand with instructions to grant a new trial limited to damages, unless Anderson agrees to a $400,000 additur representing the Donaldsons’ loss of consortium. After reduction for Jeremy’s fifty percent comparative fault, this would result in a $200,000 judgment for the Donalsons’ suffering. Anderson will have twenty days to accept or reject this amount from the date a corresponding order is entered by the trial court.