# IN THE SUPREME COURT OF THE STATE OF NEVADA

WEINGARTEN NOSTAT, INC., A
TEXAS CORPORATION,
Appellant,
vs.
MR. "D", LLC, A NEVADA LIMITED
LIABILITY COMPANY; AND RICHARD
E. DYKE, AN INDIVIDUAL,
Respondents.

No. 75664

FILED

DEC 19 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER AFFIRMING IN PART, REVERSING IN PART, VACATING IN PART, AND REMANDING

This is an appeal from a final judgment in a contract and tort action. Eighth Judicial District Court, Clark County; Timothy C. Williams, Judge.

## BACKGROUND

Weingarten Nostat, Inc. (Weingarten) owns real property located at 10305 to 10565 S. Eastern Avenue in Henderson, Nevada. In 2003, Weingarten entered into a ten-year land lease agreement with Moolah4us, who assigned the lease to Sheridan's of Henderson. In 2010, Sheridan's assigned the lease to Mr. D, LLC. The building on the leased premises was constructed during Sheridan's lease term. The construction rider in the lease agreement provided that any improvements became the

landlord's property.[1]  Mr. D's owner, Richard Dyke, testified that he purchased the building and business from Sheridan's for $650,000.

In 2013, Mr. D began negotiating the sale and assignment of the lease to Nevada State Bank (NSB).[2] To make the sale attractive to NSB, Mr. D needed to negotiate a favorable lease extension with Weingarten; however, NSB reduced and then ultimately withdrew its offer in February 2014.  In 2014, Mr. D nevertheless extended the lease and guaranty for a five-year period.

Before the extension was granted, a Weingarten leasing executive testified that she spoke to Dyke on Mr. D's behalf about two parties that were interested in the location.  Starbucks also expressed an interest in the location, but communicated with Weingarten only.  According to testimony presented at trial, Starbucks did not want to speak directly to Dyke or Mr. D representatives.

---

[1]The lease agreement provided the following:

> Section 1.05.  All improvements constructed by Tenant at the Leased Premises (excepting only Removable Trade Fixtures installed by Tenant) shall, immediately upon such construction, become and remain the property of Landlord; and Tenant shall have no right, title or interest (including lien interest) therein, except only as Tenant under the provisions of the Lease.  The aforesaid improvements, if constructed by Tenant, are not intended as any nature of rent or compensation to Landlord.

[2]Mr. D alleges that the negotiations concerned NSB purchasing the building for $400,000; however, Weingarten alleges that NSB negotiations concerned purchasing a leasehold interest for $400,000.  The draft contract between NSB and Mr. D supports Weingarten's assertion.

SUPREME COURT
OF
NEVADA

(O) 1947A

2

In January 2015, Mr. D failed to pay rent, and in February, it abandoned the property. Weingarten sued Mr. D and Dyke for breach of lease, breach of guaranty, breach of the implied covenant of good faith and fair dealing, and declaratory relief. Weingarten subsequently leased the premises to Starbucks on November 30, 2015.

Mr. D counterclaimed, alleging breach of the implied covenant of good faith and fair dealing and intentional interference with contractual relations and/or intentional interference with prospective economic advantage (IIPEA) in relation to the potential deal with NSB. Weingarten filed motions for summary judgment, seeking an order enforcing the lease terms and the guaranty and the dismissal of Mr. D's counterclaims. The district court denied the motions. The case proceeded to a nine-day jury trial. During trial, Mr. D became aware of the email correspondence between Weingarten and Starbucks regarding the location and amended its IIPEA counterclaim, shifting its focus from the lost deal with NSB to a potential deal with Starbucks.

After the close of evidence, Weingarten filed a motion for judgment as a matter of law, arguing that it did not breach any duties by failing to provide third-party offers to Mr. D. The district court dismissed the intentional interference with contract claim as to NSB but allowed the amended IIPEA counterclaim regarding Starbucks to go forward, as well as the implied covenant of good faith and fair dealing claim. The jury found for Weingarten on the breach of lease and breach of guaranty claims, awarding $132,278.42, and for Mr. D on the IIPEA counterclaim, awarding $400,000.

After trial, both parties filed motions for attorney fees and costs. The court granted Mr. D's motion for attorney fees and denied Weingarten's,

reasoning that the net judgment in favor of Mr. D was higher than the offer of judgment rejected by Weingarten. Weingarten filed a renewed motion for judgment as a matter of law, an alternative motion for a new trial, and a motion for additur. The district court denied the motions, finding there was sufficient evidence in the record to sustain the jury's verdict. Weingarten appealed.

## DISCUSSION

### The district court did not err in denying Weingarten's motion for summary judgment on the breach of lease claim, breach of guaranty claim, and IIPEA counterclaim as to NSB

The district court properly denied Weingarten's motion for summary judgment on the breach of lease and breach of guaranty claims because issues of fact remained disputed as to damages for breach of the lease. *Anvui, LLC v. G.L. Dragon, LLC*, 123 Nev. 212, 215, 163 P.3d 405, 407 (2007) (stating that the parties' intentions present a question of fact and the intent of the parties "may be determined in light of the surrounding circumstances if not clear from the contract itself" (quoting *NGA #2 Ltd. Liab. Co. v. Rains*, 113 Nev. 1151, 1158, 946 P.2d 163, 167 (1997))); *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005) (observing that this court reviews a district court's decision to deny summary judgment de novo). Section 16.03 of the lease agreement lists categories of expenses that the breaching party must pay, but the dispute over the amount of damages concerns various offsets. Because the contract is silent on offsetting costs and the parties dispute the meaning of the contract term "reasonable expenses," a genuine issue of material fact exists as to the amount of damages owed.

The district court also properly denied Weingarten's motion for summary judgment on the IIPEA counterclaim regarding the prospective

deal with NSB. In response to Weingarten's summary judgment motion, Mr. D satisfied its burden of presenting evidence in the form of affidavits or other admissible evidence that demonstrated a genuine issue of material fact. *See Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.*, 123 Nev. 598, 602-03, 172 P.3d 131, 134 (2007) (recognizing that a party who will bear the burden of persuasion on an issue may avoid summary judgment by introducing evidence sufficient to create a question of material fact with respect to that issue). Nonetheless, the IIPEA counterclaim regarding the prospective deal with NSB did not proceed to trial, thus Weingarten was not aggrieved by the district court's denial of its motion for summary judgment. *See* NRAP 3A(a) (providing that an appellant must be aggrieved by a district court's order in order to have standing to appeal).

*The district court erred by denying Weingarten's motion for judgment as a matter of law on IIPEA counterclaim as to Starbucks*

Weingarten argues that the district court should have granted its NRCP 50(a) motion for judgment as a matter of law on the IIPEA counterclaim as to Starbucks, which it renewed after the verdict under NRCP 50(b), because Mr. D failed to prove a sufficient issue for the jury as to all elements of the claim. We agree.

To prevail on its IIPEA claim, Mr. D was required to present sufficient evidence establishing that Weingarten intentionally interfered with Mr. D's prospective business relationship with Starbucks. *Consol. Generator–Nev., Inc. v. Cummins Engine Co.*, 114 Nev. 1304, 1311, 971 P.2d 1251, 1255 (1998). Mr. D failed, however, to present any evidence of a prospective business relationship between it and Starbucks. *Id.* (recognizing that "a prospective contractual relationship between the *plaintiff* and a third party" is a required element of an IIPEA claim (emphasis added)). Instead, trial testimony revealed that Mr. D had no

direct contact with Starbucks. Representatives for both Weingarten and Starbucks testified that Starbucks did not wish to engage with Mr. D, and instead directly contacted Weingarten about its interest in the property. Further, Dyke's own testimony reveals that he was unaware of Starbucks' interest in the location. He testified that *had he known* about Starbucks' interest, Mr. D would have been interested in engaging in business. Because there was no prospective economic relationship between Mr. D and Starbucks, Mr. D's IIPEA claim as to Starbucks fails. *See id.*; *see also Nelson v. Heer*, 123 Nev. 217, 222-23, 163 P.3d 420, 424 (2007) (noting that in reviewing an order resolving an NRCP 50(a) or (b) motion, the evidence must be viewed and all inferences made in favor of the nonmoving party, with the question being whether "the nonmoving party . . . presented sufficient evidence such that the jury could grant relief to that party").

Further, we reject Mr. D's characterization of Weingarten's failure to inform Mr. D of Starbucks' interest in the property as intentional interference. Weingarten had no legal duty to send potential tenants to Mr. D, and thus was under no obligation to inform Mr. D about Starbucks' interest in leasing the property or to cease negotiations. The district court therefore erred when it allowed this issue to be submitted to the jury because Mr. D failed to provide sufficient evidence to support its IIPEA counterclaim as to Starbucks. *Nelson*, 123 Nev. at 223, 163 P.3d at 425 (2007) (observing that "the standard of appellate review for an order under either NRCP 50(a) or 50(b) is de novo"). We therefore vacate the jury verdict

in favor of Mr. D on this IIPEA counterclaim and reverse the order denying Weingarten's motion for judgment as a matter of law.[3]

*The district court did not abuse its discretion in denying Weingarten's motion for additur*

The jury awarded Weingarten $132,278.42 for the breach of lease and breach of guaranty claims. Weingarten filed a motion for additur, arguing that it was entitled to an additional $117,740.70 under the contract, which required Mr. D to pay for tenant improvement and broker's fees upon abandonment of the lease. The district court denied Weingarten's motion. "The trial court is afforded great discretion in deciding motions for additur." *Donaldson v. Anderson*, 109 Nev. 1039, 1041, 862 P.2d 1204, 1206 (1993). This court will not disturb such a decision absent an abuse of that discretion. *Id.* On appellate review, this court primarily considers whether "damages are clearly inadequate or 'shocking' to the court's conscience." *Id.* at 1042, 862 P.2d at 1206.

Weingarten presented evidence at trial demonstrating that under the contract, Mr. D was required to pay it the $120,000 it agreed to reimburse Starbucks for tenant improvements and $30,000 for broker's fees it incurred to obtain the new tenant upon Mr. D's abandonment of the lease. Mr. D presented conflicting evidence demonstrating that Weingarten did not suffer actual damages as a result of Mr. D's abandonment of the premises and that these expenses were not necessary to obtain the new tenant, and thus Weingarten was not entitled to damages for tenant improvements and broker's fees under the contract. The jury weighed the

---

[3]Because we reverse the district court's denial of Weingarten's motion for judgment as a matter of law, we decline to address Weingarten's challenge to the district court's denial of its motion for new trial, as this issue is now moot.

conflicting evidence and ultimately determined that Weingarten was not entitled to such damages, and instead awarded $132,278.42 in damages for unpaid rent. Based on the evidence presented at trial, this award is neither "clearly inadequate" nor "shocking." *Donaldson*, 109 Nev. at 1042, 862 P.2d at 1206. Further, we are not convinced that the contract provision alone warrants the extraordinary remedy of additur. We therefore conclude that the district court did not abuse its discretion when it denied Weingarten's motion for additur.

*The district court must reconsider attorney fees on remand*

The district court awarded attorney fees and costs to Mr. D pursuant to NRCP 68 (offers of judgment) and denied fees requested on alternative grounds. In calculating its award, it relied in part on the jury verdict awarded in favor of Mr. D on the IIPEA claim, which we vacate for the above-stated reasons. We therefore vacate the attorney fees and costs award and direct the district court to determine on remand whether an award of attorney fees or costs to any party is appropriate consistent with this order.

It is so ORDERED.

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Cadish

SUPREME COURT
OF
NEVADA

(O) 1947A

cc:   Hon. Timothy C. Williams, District Judge
      Marquis Aurbach Coffing
      Santoro Whitmire
      Eighth Judicial District Court Clerk